CHARLES G. PATTERSON vs. ELISHA BLOOMER.[*]

AN application to a court of equity to decree the specific performance of a contract to convey real estate, is addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of the law, and is equitable, reasonable, certain, mutual, on good consideration, consistent with policy, and free from fraud, surprise or mistake.

Where a contract was made for the sale of a quarry in this state, and of personal property of the value of $25,000 connected with it—the whole for $55,000, of which $5,000 was to be paid down and the balance to be secured by a mortgage back, and the vendor, residing in the state of New York, made the agreement under the mistaken belief that a chattel mortgage would be a valid security here without a retention of possession by him, and the purchaser was insolvent, it was held that the vendor was justified in refusing to convey, and that a court of equity, in the exercise of its discretion, ought not to compel him to convey.

BILL IN EQUITY to compel the specific performance of a contract to convey a quarry and personal estate connected with it, brought to the Superior Court in Middlesex County, and tried before *Carpenter, J.* The contract was as follows :—

"This Agreement made this 20th day of August, 1867, between Elisha Bloomer of the county of Westchester and state of New York, of the first part, and Charles G. Patterson of the city of New York, of the second part, witnesseth,

"That said party of the first part, in consideration of one dollar to him paid by said party of the second part, the receipt whereof is hereby acknowledged, and of the covenants hereinafter contained on the part of said party of the second part, hath agreed, and doth hereby agree, to sell and convey unto said party of the second part the following described property, to wit, all that certain stone quarry situated at Cromwell, Connecticut, known as the North Middlesex Quarry, consisting of twenty-one acres of land, more or less, together with all the appurtenances thereto belonging, including all tools, machinery, engine, boiler, cattle, horses, harness, waggons, carts, and all

---

* This case was heard as of the February term, at the meeting of the judges in June; all the judges sitting.

other goods, chattels, and property now belonging to or connected with said quarry and the working thereof, wheresoever the same may be ; and also all the stone now raised from said quarry and on the surface ; all outstanding contracts for the sale of the stone therefrom, together with all contracts that may be made therefor after the execution of this agreement and before the sale of said quarry is consummated ; and also all the proceeds now due or coming due from all sales of stone from said quarry made by said party of the first part, since. August 10th, 1867, except as hereinafter provided, whether the same may have been delivered or not; together with all his right, and interest in and to all dock privileges and water fronts now belonging to or claimed by said party of the first part, in connection with said quarry ; for the price of $55,000, payable as follows, viz :—$5,000 within ten days after the execution and delivery of this agreement, $25,000 in three months thereafter, and the remainder in four months thereafter, as hereinafter provided ; the payment thereof, and the execution of the covenants herein provided on the part of the party of the second part, to be secured by a purchase money bond and mortgage for that amount without interest, such mortgage to contain a clause permitting the same to be paid off by installments as hereinafter provided, and the usual insurance clause. And said party of the second part doth hereby covenant and agree to purchase said premises and chattels for the price aforesaid, and to pay the said sum of $5,000, and to execute and deliver said bond and mortgage for $50,000 to said party of the first part, within ten days after the execution and delivery hereof, on receiving from him the conveyances of the premises and chattels herein agreed to be conveyed as hereinafter set forth ; and also that he will, after the execution of said mortgage, pay over to said party of the first part, at the end of every month, all amounts remaining in his hands derived from sales of stone from said quarry, after deducting therefrom the amount paid by him for the labor performed during said month, known as the "current monthly pay roll," as a payment on account of said

mortgage; also that he will permit the said party of the first part, or his duly authorized representative, to have access at all reasonable times to the books and papers connected with the business of said quarry, for the purpose of verifying such payments; also that he will pay all the working expenses and all bills for the purchase of material for the use of said quarry contracted since the 1st day of August, 1867, or which may hereafter be contracted, and will keep said quarry in good working order during the existence of said mortgage, it being understood that the amount paid by him for so much of the pay roll for workmen and officers connected with and employed by said quarry which may have accrued for services rendered between and including the 1st and 10th days of August, 1867, shall be accounted for to said party of the first part and shall be credited by him as payment on said mortgage to that amount. And said party of the second part doth further covenant, that he will furnish the balance of the stone contracted for or ordered from said quarry by St. Ann's Church, Philadelphia, and by the Colt Church, Hartford, up to and including the 10th day of August, 1867, it being understood that the proceeds of such stone are to belong to and to be collected by said Bloomer, but are to form no payment on this agreement; it being further understood, that any contracts for or sales of stone to either of these churches made or executed after said 10th day of August, 1867, shall belong to and become the property of said Patterson, subject to the terms of this agreement, and shall be executed for his benefit. Said Patterson also agrees to complete any monuments which may have been ordered from said quarry on or before said 10th day of August, 1867, the proceeds thereof to belong to said Bloomer, and also to furnish the stone for a monument for said Bloomer's own use, such as he may select out of said quarry, with coping and posts for the same. It is further agreed, that a certain contract made at Cromwell, April 24th, 1867, between S. N. Hall of Portland, and said Elisha Bloomer, shall be assumed by said Patterson in the stead of said Bloomer from August 1st, 1867, with all its advantages and responsibilities; and said party of the second part agrees

that he will hold said Bloomer harmless from all liability on the contracts above mentioned, or on any other contract connected with said quarry and purchased by him.

"And the said party of the first part doth hereby covenant and agree, to and with said party of the second part, his heirs or assigns, that he will, on the payment of said sum of $5,000 and the delivery of said bond and mortgage at the time and in the manner above set forth, execute and deliver to said party of the second part, at his own expense, a good and sufficient conveyance of the premises, chattels, contracts, and other property above described, the same to contain the usual full covenants and warranty, except as to said dock privileges and water front, which shall be conveyed without covenants of title, and will thereupon deliver up possession thereof to said party of the second part.

"And it is expressly understood and agreed that if the aforesaid payments or any part thereof shall not be made or the said covenants not carried out at the times and in the manner herein prescribed, then the sum of $5,000 paid by said party of the second part on the consummation of the sale of said quarry as herein provided, shall be forfeited to said party of the first part as liquidated damages for such breach, and shall not be considered as a payment on said mortgage, the whole amount of fifty-five thousand dollars whereof shall upon such default become due and payable, less any sum (over and above said sum of $5,000,) which may have been paid thereon by said party of the second part."

The respondent in his answer alleged the mistake under which the agreement was made, in respect to the validity of the chattel mortgage agreed for under the laws of this state without a retention of possession by the respondent, and averred that the petitioner obtained the contract by false representations as to his character and credit, and as to his pecuniary means.

The court found the following facts. At the time of the execution of the contract the parties were ignorant of the laws of this state in respect to chattel mortgages, but supposed that they were substantially like the laws of the state

of New York on that subject, and the contract was drawn and executed upon that supposition, and with the expectation that if, by the laws of Connecticut, a chattel mortgage was not a good and valid security, while the mortgagor remained in possession of the chattels mortgaged, such other and further security should be given by the petitioner as should secure to the respondent the payment of the purchase money ; but there was no express agreement to that effect and no understanding as to the nature of such further assurance. By the laws of the state of New York a chattel mortgage is required to be recorded, and when so recorded the mortgagee need not take possession of the chattels, as the record is notice to all the world and equivalent to possession ; and in case of default by the mortgagor, the property passes to the mortgagee, who may forthwith take possession without legal process.

On the 20th of August, 1867, the day on which said contract was executed, the petitioner executed and delivered to the respondent the following writing :  " C. G. Patterson is to pay for horses, $383.00, for Jack, $58.50, and all bills at quarry since Aug. 1, 1867, on day of possession, when the $5,000 is also to be paid. Aug. 20, 1867. C. G. Patterson." The petitioner on the same day entered into a contract in writing with the respondent, by which he agreed to employ in his service at the quarry John A. Bloomer, a son of the respondent, for the period of four months.

To induce the respondent to enter into the contract the petitioner falsely and fraudulently represented to him that he was a man of large pecuniary means, of high character, and. of good credit and standing in business circles, which representations were believed and relied upon in part by the respondent. The petitioner was in fact at that time, and ever since has been, not only a man of small means, but deeply insolvent, and at that time had and now has a petition for the benefit of the bankrupt laws of the United States, pending before the District Court for the Southern District of New York.

The respondent offered evidence to prove the following allegations in his answer :  " And the respondent avers that the

said Patterson was and is not a man of strict business integrity, nor of good business reputation, but on the contrary thereof is known by all with whom he is acquainted to be a man engaged in no legitimate business, and for a long time past to have maintained a bad reputation among all business men with whom he is acquainted and has had business dealings."

To the admission of this evidence the petitioner objected, but the court admitted it, and upon such evidence found the allegations to be true.

The personal property contemplated to be mortgaged in the contract and pledged to the respondent, was of about the value of $25,000.

On said 20th of August, 1867, there was a subsisting written contract between Bloomer and S. N. Hall, by which Hall agreed to serve Bloomer for one year from April 1, 1867, in superintending and managing affairs at the quarry, and Bloomer agreed to pay him therefor, in semi-monthly payments, at the rate of $1,500 per year, and to furnish him house rent, not exceeding in value $100. The bills contracted and expenses incurred at the quarry from Aug. 1st, to Aug. 28th, inclusive, including the pay roll, amounted to $5,280.

The tender made by the petitioner did not embrace an offer to pay the expenses of working the quarry, nor did the petitioner offer to indemnify the respondent in respect to the contract with said Hall, except so far as the mortgage contemplated would operate as security for the performance of the agreement. The respondent had informed himself of the character, standing, and circumstances of the petitioner before the tender was made, but made no objection to the performance of the contract on that account, nor for the reason that the petitioner did not offer to indemnify him in respect to the contract with said Hall, nor on the ground that no tender was made of the expenses incurred at the quarry.

On the 15th of September, 1867, the petitioner proposed to pay the respondent the sum of $15,000 in cash on the contract, and to secure the balance of the purchase money by a mortgage of the property, and on the 25th of the same month

proposed to raise the cash payment to $25,000, but both propositions were rejected by the respondent.

There is now in the hands of the receiver appointed by the judge who granted a temporary injunction in the case, about the sum of $9,000, being the profits of working the quarry from the 1st day of August, 1867, to the time of the trial.

The petitioner had, and has, no means of his own with which to pay for the quarry, and carry on the business thereat, but he has the ability to influence capital, and would, in the opinion of the court, have been able to make the down payments in cash, as proposed by him ; and had he succeeded in obtaining the title to the property he would probably have organized a joint stock company and have realized large profits from the sale of the stock, as he had been engaged in business transactions of that kind to a considerable extent during the last few years ; but the profits so realized would have been at the expense of the purchasers of the stock.

The court on these facts dismissed the bill.   The petitioner thereupon moved for a new trial, on the ground of sundry rulings of the court, with regard to the admission of evidence as to the character, standing and financial ability of the petitioner, and as to his fraudulent conduct.

*C. R. Ingersoll* and *Culver*, in support of the motion.

*H. B. Harrison* and *Warner*, contra.

BUTLER, J.   Applications of this character are addressed to the discretion of the court and will not be granted unless the contract is made according to the requirements of the law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy, and free from fraud, surprise or mistake.

The agreement set forth by the petitioner is made according to the forms of law, and is apparently fair, equitable, certain and mutual, consistent with policy, and made on good consideration, and if there were nothing more in the case the petitioner would be entitled to the relief sought.

But the respondent sets up in his answer fraud and mistake, and justifies his refusal to execute the contract on those grounds; and the parties were at issue upon the question whether there was either fraud or mistake to justify the refusal. The court found both and dismissed the bill.

The questions here are raised upon the motion for a new trial. That motion sets forth certain rulings of the court in relation to the admission of evidence offered to prove the allegation of fraud. In respect to the ground of mistake, although alleged in the answer and found by the court, the motion is silent. It is obvious that if the *mistake* set up and found was a material one, the respondent was justified in his refusal to execute the agreement, and that a new trial can be of no service to the petitioner; and a consideration of the alleged erroneous rulings of the court in the admission of evidence is unnecessary. We cannot doubt the materiality of that mistake.

The parties were both residents of the state of New York, and unacquainted with our laws. The respondent was selling a very large property, valued at more than fifty thousand dollars, *on time.* Twenty-five thousand dollars worth of that property was personal. There were also engagements for the fulfilling of contracts, upon which, if unfulfilled, the respondent would be liable for considerable damages. The cash down payment was small, and for the performance of the contract by the petitioner he stipulated for no other security than a mortgage upon the property sold. The respondent was entitled by the agreement to no security for the safety of the large amount of personal property, or the performance of the contracts which he had made with others, except a chattel mortgage upon that personal property, and the agreement was made upon the supposition that such a mortgage would be valid. The parties were mistaken, such a mortgage would be worthless unless possession was retained by the vendor. It is too clear for doubt that the respondent never would have entered into that agreement but for the mistaken supposition that in the execution of it he was to have the protection of a valid mortgage on twenty-five thousand dollars worth of personal

Patterson *v.* Bloomer.

property, and it is equally clear that such a mistake is a most material one, and that it was the right and the duty of the respondent to refuse to execute the agreement upon discovering the mistake. It would be grossly inequitable and unjust to compel him to perform it.

Certain circumstances are relied upon by the petitioner to relieve the case from the operation of this mistake. It is found by the court that "there was an expectation that, if by the laws of Connecticut the chattel-mortgage was not a good and valid security, while the mortgagor remained in possession of the chattels mortgaged, such other and further security should be given by the petitioner as should secure to the respondent the payment of the purchase money, but there was no express agreement to that effect, and no understanding as to the nature of such further assurance."

But this cannot aid the petitioner. It was an *expectation* merely, not a part of the agreement relied upon, nor of any subsequent or further agreement, nor was there any offer of other and different security made or tendered at the time when the tender of the five thousand dollars was made, and a deed demanded, or at any other time. *Offers* of payment are found to have been subsequently made, but they were not *tenders* and were subsequent and inadequate.

And in this connection we cannot avoid looking at the false representations made by the petitioner, and the facts found in relation to his character. Whether they do or do not show an attempted fraud, they most certainly do show that the respondent as a prudent man ought not to have fulfilled this contract at the time when demand was made upon him, without the most ample and undoubted security. Such security he could not have under the agreement, and equivalent and adequate security was never tendered him.

A consideration of the other questions in the case is unnecessary. A new trial must be denied.

In this opinion the other judges concurred; except Park, J., who dissented.