Haussman *v.* Burnham.

| | |
|---|---|
| 59 | 117 |
| 61 | 476 |
| 59 | 117 |
| 62 | 409 |
| 59 | 117 |
| 63 | 546 |
| 59 | 117 |
| 64 | 38 |
| 59 | 117 |
| 72 | 719 |
| 72 | 722 |
| 59 | 117 |
| 75 | 6 |

JACOB HAUSSMAN *vs.* MARIA BURNHAM AND OTHERS.

Hartford Dist., March T., 1890. ANDREWS, C. J., LOOMIS, TORRANCE, PHELPS and THAYER, Js.

The plaintiff, being of advanced age and in feeble health, conveyed to his wife, through a third person, a house and lot belonging to him, reserving to himself the life use, upon her promise to re-convey to him upon request, and without such promise the conveyance would not have been made. He then expected her to outlive him and the conveyance was made to provide for her support. He had been a widower and she a widow, and each had children of the former marriages, but there were none of the present marriage. About three years afterwards her health failed and it seemed probable that she would die before him and he requested her to re-convey the property. This she at once consented to do, and an attorney was employed to draw the papers. Through his advice, a deed was executed by the wife to the attorney and another by him to the plaintiff, both the plaintiff and his wife supposing, under the attorney's advice, that it was not necessary for the plaintiff to join with his wife in her deed. The error was not discovered until after the death of the wife, which occurred soon after. Upon her death her children claimed the property as her heirs, and the plaintiff brought a suit against them for the reformation of the deed or to compel them to convey the title to him. Held—

1. That the agreement of the wife to re-convey on request, by means of which she obtained the conveyance of the property to herself, was an agreement for the benefit of herself and her estate, and was therefore valid under our present statutes.

2. That the conveyance to her and the provision for her support secured by it, were a sufficient consideration for the wife's agreement.

3. That the agreement was not invalidated by the statute of frauds because not in writing, it having been performed by the other party, who was now seeking to enforce it. Nor as an agreement not to be performed within a year, as no time was fixed for its performance.

4. That it was of no importance that the property agreed to be re-conveyed was not the wife's sole and separate estate.

5. That it was no objection that the mistake in the execution of her deed was a mistake of law and not of fact. It was merely a mistake as to a statute requisite. Mistakes of such a character, where justice requires it, may be remedied in equity.

6. That the case need not be regarded as one for the reformation of the defective deed, but that a court of equity will look through the deed in such a case at the contract behind it, and if a valid contract enforce it.

7. That the consent of the wife to execute the deed of re-conveyance and her attempt to do it, were a waiver of a formal request to re-convey.

8. That as the wife held the property subject to a request at any time for a re-conveyance, the defendants took it as her heirs subject to such a request whenever made.

9. That the objection that the husband did not offer to join with his wife in the deed to the attorney was too technical and unimportant to be considered, his omission to join being fully explained by the fact of the erroneous advice of the attorney.

10. That the statement in the plaintiff's deed to his wife of a pecuniary consideration did not preclude proof of the actual consideration. The real consideration of a conveyance may always be shown, whatever is the consideration expressed.

11. That the conveyance in the plaintiff's deed to the use and behoof of his wife, and his covenant of non-claim, were not inconsistent with her agreement to re-convey, as they had reference solely to the quantity and character of the estate conveyed to her, and did not refer to the interest reserved by him.

12. That as there was no fraud on the part of the wife in not making a valid re-conveyance, there was no reason for regarding the title as held by her under a constructive trust; it being sufficient that she held it under an agreement to re-convey which the court could enforce.

[Argued March 5th—decided June 12th, 1890.]

SUIT for the correction of a deed and to compel the conveyance of certain real estate ; brought to the Superior Court in Hartford County. The principal allegations of the complaint were as follows :—

1. On the 1st day of August, 1888, Mary Haussman, then the wife of the plaintiff, who was married to him prior to January 1st, 1877, died, leaving, as her survivors, her said husband, and the defendants Maria Burnham, now the wife of the defendant Edward Burnham, and Erwin Larens, her heirs at law.

2. On the 11th day of December, 1885, the plaintiff conveyed to his said wife, by a deed to a third person, who on the same day re-conveyed to her, certain premises situated in Hartford, particularly bounded and described in said deed, a copy of which is made part of this complaint and will be produced in court.

3. The consideration for said deed was an agreement and undertaking on the part of said Mary to re-convey the premises, through a conveyance to some third party, to the

plaintiff when he should request, and the premises so conveyed were held by her in trust for that purpose.

4. On July 27th, 1888, in pursuance of the agreement, said Mary, by deed of that date, conveyed to a third party the premises in question, who, on the same day, conveyed the same to the plaintiff, which deeds of conveyance are made part of this complaint and will be produced in court.

5. By inadvertence in making and executing her deed, the plaintiff was not joined with his wife as one of the grantors in the deed; but it was the intention and aim of the said Mary to make and execute a good, valid and sufficient deed of said property by said deed of conveyance, and she believed that she had done so and was so informed by her counsel.

6. By reason of said inadvertence and the mistake aforesaid in not joining said Jacob as grantor in the deed, said Maria Burnham, and her husband, Edward Burnham, and said Erwin Larens, claim an interest in and title to said premises, as heirs of said Mary Haussman, deceased, and this claim, by reason of the conveyances aforesaid, is a cloud upon the title of the plaintiff.

The plaintiff claims—1st. Fifteen hundred dollars damages. 2d. That the deed be reformed so as to join said Jacob Haussman as grantor with said Mary Haussman, and that said Jacob Haussman be permitted and directed to execute said deed as such grantor. 3d. That said cloud be removed from the plaintiff's title by a decree of court commanding said Edward and Maria Burnham and said Erwin Larens to convey by a good and sufficient deed of conveyance any right, title or interest which they may have or appear to have in said property, from the facts heretofore alleged, to the plaintiff. 4th. Such other and further relief as to equity may appertain.

The defendants demurred to the complaint, but the court (*Carpenter, J.,*) overruled the demurrer, and the defendants filed a defense, upon which the case was heard by *Fenn, J.,* who made a finding of the facts. While the case was pending the plaintiff died and his death was suggested upon the

record, and his administrator entered. The defendant Larens lived out of the state, and no service was made upon him, but he appeared by counsel. The finding of facts was as follows:—

The plaintiff, Jacob Haussman, died December 10, 1888, being then in his seventy-eighth year. He was intestate. He left three children, issue of his first marriage, who are his heirs at law. An administrator on his estate was duly appointed, his death was suggested on the record, and the administrator entered. Mary Haussman, a widow, having children by her prior marriage, was married to Jacob about twenty-one years before his death, and died July 31, 1888, intestate, leaving two children, a son and daughter, surviving her. At the time of their marriage Jacob was the owner, in fee and unincumbered, of the real estate described in the complaint. It was, and until his death continued to be, his residence. He had purchased it about a year previous to the marriage, paying therefor $3,500, which he had earned, and which comprised his accumulations. His last wife brought him no means, but on the contrary was in debt, which debts he discharged. In December, 1885, by reason of his advanced age and impaired health, it seemed probable, and he and his wife believed, that she, being more vigorous, would long survive him. Together they consulted a lawyer in reference to some provision by which the property would be assured to her in case of his death. The attorney explained the law to them fully. A will was first talked of, then a deed, reserving a life use, similar to the one actually drawn. He had no wish to disinherit his children, and neither wished that hers should profit by the transaction. The attorney explained the contingencies under which such a result might happen, but they thought it not likely, as it seemed probable that the property would be exhausted in her support. The deeds were determined upon. A little previous to the time of this interview Mr. and Mrs. Haussman had occasion to consult him on another matter. A Mrs. Miller, a tenant in a portion of the house, claimed to have fallen upon the cellar stairs, tripping upon a flower pot

left there by Haussman, and to have been injured. She asked that some compensation should be made her. Mr. Haussman did not consider this demand just and did not wish to accede to it. For some reason he and his wife thought Mrs. Miller would be less likely to press this claim if the title to the property stood in the wife's name. In the conversations on the subject the wife promised the husband that if he would convey the property to her she would re-convey it to him at any time when he should so request. These facts, that is, this belief, and the promise of the wife to re-convey, were not communicated to the attorney, and he never knew of them, but they were the controlling reasons and cause which induced the making of the deed instead of the will, and without such promise the deed would not have been made. No third person was present at the time of such promise, nor was there any writing or memorandum of it. The evidence from which it is found is the deposition of Jacob Haussman, taken before his death, and read in evidence, and testimony of sundry witnesses as to the declarations of both Mr. and Mrs. Haussman. The attorney, from the conversations had in his presence at the time of the transaction, believed, though I do not find that it was expressly agreed, that the parties would soon return, and have a will drawn by Mrs. Haussman in favor of her husband.

In the summer of 1888 Mrs. Haussman's health became impaired, and it then seemed probable that her husband would survive her. He requested a re-conveyance, which she readily agreed to, and arrangements were made and a time fixed for going to an attorney's office for that purpose. Before the day arrived, however, she was so much worse as to be unable to leave the house, and an attorney was sent for. A will was first spoken of, but deeds were decided upon. A deed to the attorney was drawn by him and read to Mrs. Haussman, and she executed and acknowledged it. She was weak physically, and although she knew how to write, was able to sign by mark only. Her mind was also weak, but in view of all the facts, including the previous

request, promise and appointment to re-convey, the transaction was a simple one, and I find that she understood and was mentally competent to perform it. Her daughter, Mrs. Burnham, signed the deed as an attesting witness. The attorney assured her and her husband that it was a valid conveyance. She fully intended it as such, and believed it to be so. The husband did not join or offer to join in the deed, because of his reliance upon the attorney and the statement of the latter. He never knew, in the lifetime of the wife, that such joinder was called for or necessary. All parties present, including the attorney, supposed the deed a valid one, or if the attorney knew otherwise, it did not then occur to him that it might be invalid. After the death of Mrs. Haussman the attorney sent for Mrs. Burnham, informed her of the error, and requested her to allow its correction by signing a quit-claim deed. This she utterly refused to do. Mrs. Burnham was an inmate of the family prior to and at the time of her mother's death. Her presence was not desired by Mr. Haussman. He complained that she did not treat him kindly, but the fact did not appear. She was of no benefit to him. Her brother has for many years resided out of the state. Any claims which the children of Mrs. Haussman have upon this property, either in her or their own right, are purely legal. Any equities in their favor were not apparent to the court.

The defendants objected to the admission of any testimony to prove the agreement of Mrs. Haussman, set forth in the third paragraph of the complaint "to re-convey the premises, through a conveyance to some third party, to Jacob Haussman when he should request." Also to the admission in evidence of the deed of Mrs. Haussman to the attorney because her husband did not join with her in the execution of the deed. Also to the admission in evidence of the deed of the attorney to Jacob Haussman to prove any conveyance of title, because the attorney had no title to convey in the land described in said deed. Also to any declarations made by Mrs. Haussman as to the ownership of the land in controversy. Also to any evidence of her intentions as to

re-conveying the property to her husband, and as to the reasons and motives which actuated her, because such re-conveyance if attempted was a mere voluntary conveyance on her part and without consideration.

The questions as to the admissibility of the evidence objected to, and as to the judgment to be rendered on the facts, were reserved for the advice of this court.

*W. F. Henney*, for the plaintiff.

1. The agreement to reconvey on the part of Mrs. Haussman raised an implied trust to hold the property for that purpose. The court finds that "without this promise the deed would not have been made." It is also found that husband and wife together consulted a lawyer in reference to some provision by which the property would be assured to her in case of his death, and that "in December, 1885, by reason of his advanced age and impaired health it seemed probable, and he and his wife believed, that she, being more vigorous, would long survive him." It further appears that Haussman and his wife thought Mrs. Miller would be less likely to press her claim if the title stood in his wife's name, and that this belief and the promise to reconvey were the controlling causes which induced the making of the deed instead of a will. Four things are thus made certain by the record :—(1st.) Mrs. Haussman obtained title to the property by virtue and in consideration of an agreement, antecedent to the conveyance, that she would, at his request, reconvey to her husband.—(2d.) That upon this agreement, and to provide against the accident of his death before hers, the conveyance was made.—(3d.) That the conveyance was, and was designed by him to be, for her advantage, as it secured her against want in the event of his death, and by accepting the deed she accepted all the advantages to be derived from it.—(4th.) No such reconveyance was ever made, though requested by him. Equity raises an implied trust under such circumstances. *Collins* v. *Tillou*, 26 Conn., 368 ; *Hayden* v. *Denslow*, 27 id., 335, 341 ; *Peck* v. *Hoyt*, 39 id., 9 ; *Dowd* v. *Tucker*, 41 id., 197 ; *Todd* v. *Munson*, 53 id., 579 ;

*Caldwell* v. *Carrington's Heirs*, 9 Pet., 86; *Brick* v. *Brick*, 98 U. S. R., 516; *Boyd* v. *De la Montagnie*, 73 N. York, 498; *Wood* v. *Rabe*, 96 id., 426; *Greenawalt* v. *Kohne*, 85 Penn. St., 369; *Cox* v. *Arnsmann*, 76 Ind., 210; *Sandfoss* v. *Jones*, 35 Cal., 484; *Brison* v. *Brison*, 75 id., 525; *Broder* v. *Conklin*, 77 id., 338. Even if it could be regarded as an express trust it would not preclude the plaintiff from proving the parol agreement. " The fact that the agreement incidentally involved a trust will not prevent the plaintiff from proving the contract." *Crocker* v. *Higgins*, 7 Conn., 342. See also *Todd* v. *Munson*, 53 id., 579, 592.

2. Mrs. Haussman, having received the benefits of the agreement, could not, if still living, refuse to carry it out. *Hayden* v. *Denslow*, 27 Conn., 341; *Todd* v. *Munson*, *supra*. Equity will enforce such a contract. *Crocker* v. *Higgins*, *supra*. To say that her heirs take the land free from any obligation to reconvey, is to hold that they inherit a larger estate than their mother from whom they derive title. As equity would imply, in her lifetime, a trust for her husband's benefit resulting from her agreement to reconvey, so after her death it will charge the estate with a trust in favor of his heirs. 2 Pomeroy's Equity, 621. To allow her heirs to take the property unincumbered by this trust, would operate as a fraud upon his heirs. *Brison* v. *Brison*, 75 Cal., 525, and authorities *supra*. Equity will allow even an express trust to be proven by parol for the sake of preventing fraud or correcting a mistake. *Todd* v. *Munson*, *supra*. It is to be noticed in this action that the case at bar differs from all the cases cited by the defendants in this essential particular. In the cases so cited the property, the conveyance of which is attempted to be enforced, was the wife's own property, purchased with her means or inherited from her relatives. *Dickinson* v. *Glenney*, 27 Conn., 104; *Gore* v. *Carl*, 47 id., 291; *Pease* v. *Bridge*, 49 id., 61. In the case at bar Mr. Haussman bought the agreement to reconvey, and paid as the purchase price for it the deed to his wife. He has performed his part of the agreement, and she has taken the benefit of it. The case of *Schindler* v. *Mulheiser*, 45 Conn.,

153, challenges attention from the fact that it indicates to what length a court will go in order to prevent the perpetration of a fraud. In that case the defendant had given the plaintiff his note for certain real estate conveyed to him by an absolute deed by the plaintiff. It was held in a suit on the note that parol evidence was admissible on the part of the defendant to show that the conveyance was not intended as a sale, but was made by the plaintiff for a certain purpose of his own, it being the understanding with the defendant that the land was afterwards to be conveyed back, and that the note was given at the time under an agreement that it was not to be paid.

3. The deed of Mrs. Haussman, through a third party, to her husband, is a declaration and an execution of a trust. She did all that lay in her power to fulfill the agreement upon which the property was conveyed to her. The fact that her husband, for whose benefit the deed was made and whose property the land in question was, under the advice of counsel, did not join his wife in the conveyance, will hardly suffice to degrade a court of justice into an instrument for perpetrating a fraud. The only difficulty, as will appear from an examination of the case, which the court found with the plaintiff's claims in *Todd* v. *Munson*, was that he did not prove them, that he offered no evidence tending to establish the contract which he set up, and which the court held would have been legally sufficient to have entitled him to his case. But in the case now under consideration the agreement, as found by the court, is abundantly established by the testimony of the witnesses, and the deed of Mrs. Haussman in fulfillment of its provisions is in evidence.

4. The deed from Mrs. Haussman to the attorney, though executed without her husband joining, is a good and valid conveyance of the property in question.—(1st.) A married woman may be a trustee for her husband or for a third person. " If what is the husband's is made to vest by conveyance in the wife, she will hold it as trustee for him." 2 Bishop's Law of Married Women, § 120, and authorities

there cited.—(2d.) "She may transfer a trust estate by lease and release as a *femme sole*." 2 Kent's Com., 151; *Gridley* v. *Winant*, 23 How., 500; *Springer* v. *Berry*, 47 Maine, 330; *Sawyer's Appeal*, 16 N. Hamp., 459. If a married woman may act as trustee at all, she may do, without the joinder of her husband, any act necessary to the execution of the trust. Her conveyance, under such circumstances, is in the nature of the execution of a power. "It has been long settled that a married woman may execute a power without the co-operation of her husband." 2 Bishop's Law of Married Women, §§ 700, 701, and notes; *Gridley* v. *Winant*, *supra*; *Gridley* v. *Westbrook*, 23 How., 503. The case of *Gridley* v. *Winant* challenges attention, from the fact that it explicitly decides that a married woman may convey by deed, without the joinder of her husband, lands held by her as trustee, though the title stand in her name individually and the conveyance made by her runs in her name as an individual and not as trustee; and that it is always competent for her to make such conveyance, excepting where, in so doing, she would defeat a right of her husband or impose a responsibility on him by her unassisted act. But her husband has absolutely no interest, as such, in property held by her as trustee. *Welch's Heirs* v. *Chandler*, 13 B. Monr., 420, 429; *Chew* v. *Comrs. of Southwark*, 5 Rawle, 160; 1 Bishop's Married Women, § 495, and notes.—(3d.) We have shown that Mrs. Haussman held the property in question as trustee for her husband. As in the case of *Dowd* v. *Tucker*, 41 Conn., 197, the trust was not expressed, it was implied. "The promise was not to hold the property in trust, but to convey it." Mrs. Haussman's agreement to reconvey, coupled with her acceptance of the deed in question upon that understanding, was a combination of circumstances from which the law implies that she holds the property in trust for the performance of that agreement. The record discloses no express promise on her part to hold the property in trust. The case of *Cotton* v. *Wood*, 25 Iowa, 43, would seem to be decisive of the case at bar, the facts being almost precisely alike. In that case the husband paid the purchase

money for certain real estate and took title in the name of the wife, upon her express promise to convey to him upon request. A statute provided that an express trust must be evidenced by a writing. The husband died without making request for a conveyance. The court held—1st. That the wife held the property as trustee for the husband. 2d. That the trust was resulting and not express. 3d. That evidence of the agreement to convey was properly admitted. 4th. That notwithstanding the neglect of the husband to request a conveyance, the property belonged to his heirs, and that equity would interfere to quiet their title.

5. The facts found show constructive fraud, from which equity raises a constructive trust owing to the confidential relation of husband and wife. *Brison* v. *Brison,* 75 Cal., 525 ; *Broder* v. *Conklin,* 77 id., 338.

6. For the purpose of quieting the title the plaintiff is entitled to a decree confirming the deed of Mrs. Haussman to the attorney as a valid and sufficient conveyance of all her title to and interest in the property. If it be thought necessary that the heirs of Mr. Haussman should be made parties plaintiff, the court can determine the legal questions involved and remand the case for them to formally enter. The counsel for the plaintiff is counsel for them also and will ask that they be made parties.

*R. Welles,* with whom was *E. Johnson,* for the defendants.

1. Mrs. Haussman's deed to the attorney was null and void, because her husband did not join with her in its execution, as required by Gen. Stat., § 2960. This statute is an enabling act and impliedly prohibits any such sole conveyance from being "valid and effectual." This is the construction uniformly given by the courts. *Whiting* v. *Stevens,* 4 Conn., 46 ; *Dickinson* v. *Glenney,* 27 id., 104 ; *Goodman* v. *Randall,* 44 id., 321 ; *Pease* v. *Bridge,* 49 id., 61 ; *Stafford Savings Bank* v. *Underwood,* 54 id., 2. See also 1 Bishop on Law of Mar. Women, §§ 599, 601 ; *Concord Bank* v. *Bellis,* 10 Cush., 276 ; *Lowell* v. *Daniels,* 2 Gray, 161 ; *Good* v. *Zercher,* 12 Ohio, 368. Indeed, the complaint proceeds upon

the theory that this deed is legally void, but asks a court of equity to reform it. We raise this point in the demurrer, in the answer, and in the objections to testimony. As the deed is made a part of the complaint, the demurrer was well taken.

2. The plaintiff asks that the deed " be reformed so as to join said Jacob Haussman as grantor with said Mary Haussman." But this is impossible, and was impossible ever after her death. It is equally impossible for the defendants to convey their interest to him, as prayed for. There is not an allegation in the complaint or in any of the pleadings that he left any heirs, and the defendants objected to any evidence not pertinent to the allegations of the complaint. It is found that he left three children who are his heirs at law, and this finding is not warranted by a single allegation ; but what are their names, and whether they live in Connecticut or Congo, are married or single, idiots or minors, is not found. If Mr. Haussman had any interest in the property in question when he died, it descended to his heirs and not to his administrator, and the court cannot command the title to be conveyed to the latter, for he is not entitled to it. The heirs at law are not parties to this suit, and it does not appear that they wish the court to interfere in their behalf ; otherwise they would have been joined as parties. 2 Wms. on Exrs., 6th Am. ed., 879 (804); Story Eq. Pl., § 354 a. The defendant Larens is only subject to the jurisdiction of this court so far as he has submitted to it by appearing by counsel. Can the court by virtue of such an appearance compel him to make the deed asked for ? The court cannot take the title which has vested in the defendants and vest it in the husband's heirs. The legislature could not do this. Good v. Zercher, 12 Ohio, 368.

3. The complaint alleges no request to reconvey. As a matter of pleading the plaintiff has not brought himself within the terms of his own agreement. He alleges that his wife was to convey back to him only " when he should request such conveyance," and it is not alleged that he ever made such request. The making of the request was a

condition precedent to his right to a conveyance. 1 Chitty Pl., 330. And the husband never offered to join in a reconveyance. It is found that "the husband did not join or offer to join in the deed. * * * He never knew in the lifetime of his wife that such joinder was called for or necessary." Husband and wife were both ignorant. It was ignorance of the law. This ignorance accounts for his neglect to join in the deed, but does not excuse it. It is found that she fully intended the deed as a valid conveyance, and "believed it to be so." She died in that belief. The only failure was on his part. He now asks the court to relieve him from the effects of his own negligence—to enforce a contract which he alone prevented from being completed when the deed was made. There was never any breach of the contract on the part of the wife.

4. The agreement to reconvey was null and void.

*First.* Because of the coverture of the wife. It is alleged and found that she married prior to 1877. In the leading case of *Dickinson* v. *Glenney*, 27 Conn., 104, STORRS, C. J., says (p. 113:) "It is not to be denied that the executory agreement of a married woman concerning her real estate, though assented to by her husband, is absolutely a nullity. The same policy which would destroy a contract in the shape of a conveyance lacking certain requisites, would be equally fatal to an agreement to make such a conveyance." "The agreement by a *feme covert*, with the assent of her husband, for a sale of her real estate, is absolutely void at law, and the courts of equity never enforce such a contract against her. * * * The wife is deemed incompetent to make a contract, unless it be in her character of trustee, and when she does not possess any beneficial interest in her own right." 2 Kent's Com., 168. This reasoning is peculiarly applicable to this case because the plaintiff practically admits that his wife's deed is invalid, but asks the court to enforce her executory agreement as if that were not equally invalid. 1 Bishop on Law of Mar. Wom., § 601 ; 2 Story's Eq. Jur., §§ 1367, 1391; Schouler's Dom.

Rel., 152; 1 Bla. Com., 442; *Anson* v. *Merritt,* 13 Conn., 478; *Bear's Admr.* v. *Bear,* 33 Penn. St., 525, 530.

*Second.* Because her estate was not sole and separate. The deeds by which the estate was conveyed from the plaintiff to his wife show no intention of conveying a sole and separate estate, therefore it was not so. *Plumb* v. *Ives,* 39 Conn., 120; *Hayt* v. *Parks,* id., 360. Express promises by a married woman are only binding when made concerning her separate estate, or pursuant to some statute authorizing them. *Platt* v. *Hawkins,* 43 Conn., 139, 143.

*Third.* Because the agreement was verbal. A verbal agreement relating to lands is void by the statute of frauds. *Dean* v. *Dean,* 6 Conn., 285; *Vail's App. from Probate,* 37 id., 185; *Todd* v. *Munson,* 53 id., 579; *Rasdall's Admrs.* v. *Rasdall,* 9 Wis., 379, 385; 1 Perry on Trusts, § 79; 2 id., § 685; 2 Story Eq. Jur., § 980. The statute (Gen. Statutes, § 984,) with regard to the contracts of married women, does not cover a contract to convey her lands. *Gore* v. *Carl,* 47 Conn., 293. If it be claimed that the trust mentioned in the complaint is a resulting trust, then the rule is that "the trust must result at the instant the deed is taken and the legal title vested in the grantee." 1 Perry on Trusts, § 133; *Barrows* v. *Rohan,* 41 Conn., 278.

*Fourth.* Because the alleged agreement contradicts the deed. It is alleged that this agreement was the consideration for the original deed of Mr. Haussman. It cannot be allowed to prove such to be the case, as such proof would contradict the deed itself in several particulars.—(1st.) The agreement does not appear on the face of the deed as the consideration. Money is the sole consideration stated. It has been held in this state that the clause in a deed acknowledging payment prevents a resulting trust. *Belden* v. *Seymour,* 8 Conn., 304; *Meeker* v. *Meeker,* 16 id., 383; 1 Perry on Trusts, § 162.—(2d.) The agreement is inconsistent with the life estate reserved in the deed. This was a special provision drawn up by their lawyer after full and careful consideration, and is a much more satisfactory proof of their intention at the time than the secret agreement made nobody

knows when. It is wholly inconsistent with the alleged agreement, which ought to be presumed to have been then abandoned.—(3d.) The agreement is inconsistent with the "use and behoof" declared in the deed. "It is a rule that when a use is declared no other use can be shown to result." 1 Perry on Trusts, § 162.—(4th.) The agreement is inconsistent with the covenant of non-claim contained in the deed. Rawle's Cov. for Title, 222; *Newcomb* v. *Presbrey*, 8 Met., 406; *Gibbs* v. *Thayer*, 6 Cush., 30; *Lothrop* v. *Snell*, 11 id., 453; *Porter* v. *Sullivan*, 7 Gray, 441.—(5th.) "If a feoffment was made to a wife or child no use resulted, for the consideration of blood was held a good consideration, and an advance or settlement was presumed." 1 Perry on Trusts, § 164. The finding shows that the property was intended for the wife's support. No other intention was disclosed to their lawyer.—(6th.) Mary Haussman's deed was a mere voluntary conveyance without consideration. Courts of equity will not assist in enforcing voluntary defective conveyances. 1 Story's Eq. Jur., § 793 *b.*; Pomeroy on Cont., § 57; 1 Perry on Trusts, § 163; *Dickinson* v. *Glenney*, 27 Conn., 104.

5. The failure of Mr. Haussman to get a valid deed was owing to his own negligence. He never took the action contemplated by his agreement interpreted according to its legal effect, which rendered it incumbent for his wife to perform her part, and until he took such action and she refused no trust could arise, for she was under no obligation to convey alone and could not possibly do so. If he had done his part he would have had the property, which his failure alone prevented. *Cowan* v. *Wheeler*, 25 Maine, 267, 281; *Boyd* v. *Stone*, 11 Mass., 342, 346; *Perry* v. *McHenry*, 13 Ill., 227; *Wheeler* v. *Reynolds*, 66 N. York, 227. This agreement, if valid, is more akin to what is defined as a condition subsequent, attached to the grant. *Wheeler* v. *Walker*, 2 Conn., 200; *Finlay* v. *King's Lessees*, 3 Peters, 375; 2 Cruise's Dig., tit. 13, ch. 1, secs. 1, 6. In that view of the case his negligence in not performing his part of the agreement would excuse any default on her part. 2 Cruise's Dig., tit. 13, ch. 2,

secs. 25, 27 ; 1 Washb. R. Prop., 453, § 18 ; *U. States* v. *Arredondo*, 6 Peters, 745.

PHELPS, J.   The facts material to the issue in this case are these :—

[The facts being fully stated, (*ante* p. 120,) the statement of them by the judge is omitted.]

The plaintiff claimed in his complaint—1st, pecuniary damages; 2d, a reformation of the deed from Mrs. Haussman to the attorney, so as to join Mr. Haussman as grantor with his wife; 3d, the removal of the cloud on the plaintiff's title by commanding the defendants to convey to Mr. Haussman any title or interest in the premises which they may have; and 4th, such other and further relief as to equity may appertain.   The question is, whether by this action there is a remedy for those who by the aforesaid mistake have been deprived of an estate which was by both parties intended for them, and which but for such mistake they would have received.

It is scarcely possible that the case could be made which would present clearer or stronger equities, and it would seem that the consequences of such a mistake should be relieved against unless there are insurmountable obstacles in the way, and a court of equity should be astute and diligent in its efforts to prevent such manifest injustice.

The underlying question in the case is, whether the promise by Mrs. Haussman to reconvey the property was valid. That the legal and equitable title, subject to the reserved life estate in Mr. Haussman, was vested in her, is conceded. Indeed the defendants claim and derive whatever title or interest they possess in the property, through the deed from Mr. Haussman to his wife, which was made pursuant to the agreement between them, a part of which was the promise of Mrs. Haussman to reconvey.

That husband and wife may during coverture make contracts for the conveyance of property between themselves which will be good in equity, has long been settled both in Great Britain and here.   The court will examine them with

great care, and when they are found to contain the essential requisites which exist in the case before us, they will always be upheld. *Slanning* v. *Style*, 3 P. Wms. 334; *Lucas* v. *Lucas*, 1 Atk., 270; *Lady Arundell* v. *Phipps*, 10 Ves., 146; *Livingston* v. *Livingston*, 2 Johns. Ch., 537; *Shepard* v. *Shepard*, 7 id., 57; *Wallingsford* v. *Allen*, 10 Peters, 594; *Hinman* v. *Parkis*, 33 Conn., 197–8.

The consideration for the promise of Mrs. Haussman was the conveyance to her, and the provision for her support secured by it. That it was valuable and adequate cannot be questioned, nor that it was made for the benefit of herself and her estate. It was reasonable and certain in its terms, and would not if executed interfere with the rights of creditors, and she might well have made the reconveyance in pursuance of it. If it was void at law, its validity in equity cannot now be doubted. *Donovan's Appeal from Probate*, 41 Conn., 551; *Hitchcock* v. *Kiely*, id., 611.

It is said the property was not her sole and separate estate, and therefore her promise to reconvey was invalid. This objection has been practically disposed of in what is said respecting the validity of the promise. As the promise by which she obtained the conveyance was for the benefit of herself and her estate, it is unimportant whether the property to which it related was her sole and separate estate. The contract of a married woman for the benefit of herself or her estate is binding in equity, and the estate affected by it need not be held by her to her sole and separate use. See authorities last above cited.

The statute of frauds is also interposed as a defence. If this was a contract relating to the sale of land, and therefore originally within the statute, it was part of an agreement which had been fully performed by the other contracting party to it, and therefore taken from its operation. It is not objectionable for the reason that the promise was not to be performed within a year. No time for performance was stipulated, and it might have been made at any time. That statute has no application to this case. *Hayden* v. *Denslow*, 27 Conn., 341; 1 Rev. Swift's Dig., 255, and cases cited.

It is claimed that the mistake was one of law and not of fact, and that therefore a court of equity can give no relief. This has been considered the general rule on the subject, but in *Stedwell* v. *Anderson*, 21 Conn., 144, the court say that it is not of universal or unqualified application. And in *Patterson* v. *Bloomer*, 35 Conn., 64, a case where the parties were mistaken as to the legal effect of a chattel mortgage under which possession was not retained by the vendee, and where a specific performance of the contract was asked, BUTLER, J., giving the opinion of the court says: "The parties were mistaken. Such a mortgage would be worthless unless possession was retained by the vendee. It is too clear for doubt that the respondent never would have entered into that agreement but for the mistaken supposition that in the execution of it he was to have the protection of a valid mortgage. It is equally clear that such a mistake is a most material one, and that it was the right and duty of the respondent to refuse to execute the agreement on discovering it, and it would be grossly inequitable and unjust to compel him to perform it."

The analogy between that case and this is very striking, and the principle which the court there applied seems directly applicable to the facts here.

It is said that the complaint alleges no request to reconvey—that such a request was a condition precedent to the plaintiff's right to a reconveyance—that it should have been alleged, and because it was not, no evidence to prove it was admissible—and that to the admission of such evidence objection was duly made.

Ordinarily such an allegation would be necessary, but it appears that Mrs. Haussman was willing and attempted to make, and supposed she had made, a proper conveyance. If no request was made, there was such an attempted performance by her, by acts which in their order were subsequent to a request, that she must be held to have waived it, and the waiver will have the same operation and effect against those who stand in her place as against herself. The defendants are claiming the property by inheritance from her,

and under no other title. The promise to reconvey was made by her, and she held the property subject to a request at any time to make the reconveyance. That liability and duty constituted an equity which attached to it in her hands, and the defendants took and now hold it subject to the same equity, which can be enforced against them in the same manner and to the same extent that it might have been against her if she were living.

That a request to reconvey was in fact made by Mr. Haussman is found by the court, but under the circumstances we consider it entirely immaterial.

It is further said that the husband did not offer to join with his wife in a reconveyance. This is true, and in his non-joinder consists the mistake sought to be relieved against. He was willing to join and would have done so but for the erroneous legal advice by his attorney, in whom he confided and on whose judgment he was justified in relying. If the non-joinder and the mistake which occasioned it can be remedied, we think the omission of the offer to join too technical and unimportant to be allowed to prevent the court from doing equity when it is clearly demanded and should be done unless there are substantial reasons to the contrary.

It is also urged that the agreement between the parties contradicts, or is inconsistent with, the deed from Mr. Haussman, because it is alleged in the complaint that the consideration was the promise of Mrs. Haussman to reconvey, whereas in the deed it was stated to be of a pecuniary character.

It has been often decided by this court, and is as well settled by its repeated adjudications as any question can be, that when the real consideration for a conveyance is different from that expressed in the deed it may be shown by parol, and the variance does not impair the validity or change the effect of the conveyance.

The contract which was the consideration for the deed was not intended to be reduced to writing or incorporated in the deed, and the deed was only given in pursuance and part exe-

cution of the contract.    *Crocker* v. *Higgins*, 7 Conn., 342;
*Collins* v. *Tillou*, 26 id., 368; *Galpin* v. *Atwater*, 29 id., 99;
*Clarke* v. *Tappin*, 32 id., 67, 68; *Purcell* v. *Burns*, 39 id.,
429; *Post* v. *Gilbert*, 44 id., 10; *Schindler* v. *Mulheiser*, 45
id., 154; *Hubbard* v. *Ensign*, 46 id., 585; *McFarland* v.
*Sikes*, 54 id., 252.

It is said also that the agreement to reconvey is inconsist-
ent with the life estate reserved in the deed.   The promise
of Mrs. Haussman to reconvey the estate was simply an
agreement to reconvey what had been previously conveyed
to her.   She could have done nothing more, and it is obvi-
ous that nothing else was contemplated, or promised, or un-
derstood by the parties to be promised.

It is also said that it is inconsistent with the use and be-
hoof, and the covenant of non-claim, contained in the deed.
These are objections of a similar character with the last, and
like that rest on no substantial foundation.   The use and
behoof of the grantee, and the non-claim by the grantor, re-
late only to the quantity and character of the estate con-
veyed, and have no connection with or reference to any
interest in the premises which was reserved.

The further claim is made that the deed from Mrs. Hauss-
man was a voluntary conveyance, and for that reason a court
of equity will not relieve.   There was a good and valuable
consideration for the deed in the title to and use of the prop-
erty she received from Mr. Haussman under the agreement.
She does not appear to have been indebted, no creditors were
defrauded or prejudiced, and the claim that it was voluntary
is wholly unsupported.

It is also insisted that no judgment can be rendered against
the defendant Erwin Larens, because he is a non-resident of
the state, and no service of the complaint was made on him.

He appeared by counsel, and, without interposing any ob-
jection to the jurisdiction of the court, pleaded to the merits
of the case.   He waived service by voluntarily submitting to
the jurisdiction, and as the property involved in this issue is
situated in this state, and within the jurisdiction of its courts,

there is no reason for this claim. *Payne* v. *Farmers & Citizens' Bank*, 29 Conn., 415.

It is claimed further that the deed by Mrs. Haussman was void, and that a court of equity has no power to give it vitality and force. This may be so, but the court may look through the deed to the contract back of it, and enforce that, provided it is valid. *Goodman* v. *Randall*, 44 Conn., 321.

Some remarks in the opinion of the court in the case of *Dickinson* v. *Glenney*, 27 Conn., 104, on which the defendants rely, at first sight appear to be at variance with that doctrine. The court was dealing in that case with a deed which was purely voluntary, and wholly without consideration, and which failed of having been properly executed by the mere ignorance of the parties with respect to the necessary legal formalities, and which had no valid contract behind it which could have been enforced. The parties had not the excuse of having been misled by the mistaken judgment of a legal adviser in whom they properly trusted, and the accident or mistake consisted wholly in their ignorance of the law, which they took no pains to prevent.

Toward the close of the opinion the court, by STORRS, C. J., say, on p. 112 :—" It sometimes happens that where equity is compelled to yield to the absolute requirements of law restraining its efficacy in reforming agreements, some other agreement behind the defective contract may exist of which equity can lay hold, and thus indirectly, though in strict conformity with established principles, afford a remedy for the deficiency. A defective deed is sometimes treated practically as an executory contract for the sale of lands and its execution is decreed. We confess that it seems to us that this proceeding is not the reformation of a deficient instrument, but rather belongs to the branch of equity jurisprudence which relates to the specific performance of contracts— to the performance of contracts of which the defective instrument is the evidence or memorandum. In the present case the principle will not avail the petitioners. If they resort to an agreement lying back of the deed, they will bring

to light only a contract legally void.   For it is not to be de-
nied that the executory agreement of a married woman con-
cerning her real estate, though assented to by her husband,
is absolutely a nullity—a proposition which, as we have al-
ready stated, is true of all the contracts of married women
other than those which the statute expressly validates."

That case was decided prior to the statute of 1872 giving
a remedy at law against married women upon contracts
made by them for the benefit of themselves or their estates,
and before the many judicial decisions and statutory provi-
sions which have since greatly enlarged the capacity of
married women with respect to their property and rights,
and extended their remedies and liabilities upon their con-
tracts.   This has necessarily carried with it a corresponding
enlargement of the jurisdiction of courts, both of law and
equity, with respect to them and their estates.   The reasoning
of the opinion was well adapted to the facts of that case
and the law as it then existed.   But we think we may now
well hold, without modifying that opinion except so far as
the difference in the facts and the changes in the law neces-
sarily produce that effect, that the defendants are not equit-
ably entitled to retain the estate, and that such relief should
be granted as it is competent for a court of equity to give.

In the view we have taken of the case it seems entirely
unimportant whether the deed from Mr. Haussman raised a
trust of any kind for the benefit of himself or his heirs;
and we discover nothing in the conduct of Mrs. Haussman,
or in the relations of the parties, which we think tends to
establish actual or constructive fraud.   We think the arm
of equity is long enough to reach the injustice we are en-
deavoring to prevent, and that it can be done without vio-
lence to established principles.

As the complaint is framed however, and as the record
now stands, we think there are serious difficulties in the
way of advising the Superior Court to render a judgment
for the plaintiff.   We do not see how, since the decease of
Mr. Haussman, we can properly advise that the deed from
Mrs. Haussman to the attorney be reformed so as to join

Mr. Haussman as a grantor with his wife, and permit and direct him to execute the same; nor that the alleged cloud be removed from the plaintiff's title by a decree commanding the defendants to convey to Mr. Haussman such title or interest in the property as they may have.

The heirs at law of Mr. Haussman are now the only parties properly entitled to relief. They have not since his death been made parties to the action, and are not regularly before the court or legally asking for relief. It is true that the death of Mr. Haussman has been suggested on the record and that his administrator has entered to prosecute the action. We do not see how he is entitled in his representative character to relief, or to a judgment for the benefit of the heirs. If it was an action at law to recover the possession of the estate under Gen. Statutes, § 1012, there might be no difficulty; but the statute is in express terms limited to an action of disseisin, and we do not feel justified in extending it by analogy, though the object sought to be obtained in this case is similar to that provided for in the statute.

We think the case should be remanded to the Superior Court, where the plaintiff can ask liberty to file a supplemental complaint showing the interest of the heirs of Mr. Haussman in the subject matter, and making them parties, and by such additional averments as may be pertinent and proper, demand for them appropriate relief.

In this opinion LOOMIS, TORRANCE and THAYER, Js., concurred.

ANDREWS, C. J., (dissenting.) This case is reserved for the advice of this court. The facts are these. Jacob Haussman and Mary Haussman were married about the year 1867. Each had been married before and each had children by such former marriage. On the 11th day of December, 1885, Jacob, being then in feeble health and not expecting to outlive his wife, and intending to make a provision for her after his death, conveyed by a quit-claim deed the premises described in the complaint to an attorney-at-law

reserving to himself the use, occupation and control of the same during his natural life. On the same day and as part of the same transaction his grantee, by a release deed, conveyed the same land to Mary Haussman. The consideration expressed in each of the deeds is " divers good causes and considerations, and especially one dollar " received to the satisfaction of the grantor.

The Superior Court, upon evidence to which objection was made, but which was received notwithstanding, in order that all the questions might be reserved, found that the real consideration for the deed from Jacob to the attorney and from the attorney to Mary was a parol promise made by Mary to Jacob, prior to the making of those deeds, and unknown at the time to any other person, that she would re-convey the land to Jacob, through some third person, whenever he, Jacob, should request her to do so. It is found that sometime in July, 1888, Jacob did request her to re-convey the land to him, and that on the 26th day of that month she undertook to comply with that request and made a release deed of the land to an attorney, which she herself signed and acknowledged and which was properly witnessed; but this deed was never executed jointly by her and her husband and was never executed or acknowledged by her husband at all. On the next day the attorney made a release deed of the same land to the husband, Jacob. Mary died soon thereafter. Neither Mary nor her husband knew at any time during her life that it was necessary to have the deed to the attorney executed jointly by herself and her husband. They were advised and believed that the deed she had made was a good and valid one to convey all her interest in the land to her husband.

The defendants in the case are the children of Mary Haussman by her former marriage. Since this suit was brought Jacob Haussman has died intestate. An administrator on his estate has been appointed, who has entered and is now prosecuting this action for the benefit of his children of a former marriage. So that as the case now stands the parties in interest are the heirs of Jacob Hauss-

man on the one side and the heirs of Mary Haussman on the other.

The claim for a judgment in damages is not pressed.

The plaintiff's first claim for relief is, that the deed from Mary Haussman to the attorney may be reformed so as to join Jacob Haussman as a grantor with the said Mary Haussman, and that said Jacob be permitted and directed to execute the deed as a grantor. Jacob being now dead it is impossible to grant this prayer. But treating the case in this respect as though Jacob was still alive, we are met by the rule that where a deed or other written contract is defective in some particular required by statute, it cannot be reformed. In Story's Eq. Jur., sect. 177, it is said:—" And there are other cases of the defective execution of powers where equity will not interfere; as for instance, in regard to powers which are in their nature statutable, where equity must follow the law be the consideration ever so meritorious. Thus the power of a tenant in tail to make leases under a statute, if not executed in the requisite form prescribed by the statute, will not be made available in equity, however meritorious the consideration may be. And indeed it may be stated as generally, although not universally true, that the remedial power of courts of equity does not extend to the supplying of any circumstance for the want of which the legislature has declared the instrument void; for otherwise equity would in effect defeat the very policy of the legislative enactments." *Bright* v. *Boyd*, 1 Story, 478; *Hibbert* v. *Rolleston*, 3 Brown Ch., 571. This doctrine has been recognized and acted upon to its full extent by this court in *Dickinson* v. *Glenney*, 27 Conn., 104. In that case Maria S. Dickinson, the wife of Isaac Dickinson, united with her husband in the execution of an instrument intended as a conveyance of her land to a third party, who at the same time executed to the said Isaac a conveyance of the same, the object being to transfer the title from her to her husband. The deed executed by herself and her husband was defective in not being acknowledged by him, being in all respects her deed except in the mere signing of the same

by him.    The parties intended that the deed should be pre-
pared and executed in such manner as to be effectual for
the conveyance of the estate, and that they were not so
drawn was matter of accident and mistake.    That case is
still further like the one before us as it now stands, in the
respect that both husband and wife were dead at the time
the petition was brought.    The heirs of the husband were
petitioners and the heirs of the wife were respondents.
Judge STORRS gave the opinion, and, after examining the
authorities, decided that the case could not be maintained.

That case is conclusive of the present one in respect to
the first claim for relief.    The reformation of any written
contract implies that the agreement between the parties is
executed.    It is the correction of an executed agreement
and not the performance of an executory one.    But if we
regard the promise of Mrs. Haussman as an executory one
on her part to convey her land, the difficulty is only in-
creased, for the executory contract of a married woman to
convey land is wholly void.    No court can give effect to
such an agreement by decreeing its fulfillment.    *Gore* v.
*Carl,* 47 Conn., 291; *Annan* v. *Merritt,* 13 id., 478; *Dickin-
son* v. *Glenney,* 27 Conn., *supra ; Martin* v. *Dwelly,* 6
Wend., 9; *Purcell* v. *Goshorn,* 17 Ohio, 105; *Carr* v.
*Williams,* 10 Ohio, 305.

The plaintiff also claims to recover on the ground of a
trust.    All possible trusts, whether of real or personal es-
tate, may be divided into two general classes, express trusts
and implied ones.    Pomeroy's Equity Jurisprudence, section
152.    Those created by the intentional acts of the parties
are express.    Those created by operation of law, where the
acts of the parties may have had no intentional reference to
any trust, are implied.    At section 155 the latter class is sub-
divided into resulting and constructive trusts.    If it be grant-
ed that Mrs. Haussman was under no disability by reason of
her coverture to make contracts concerning land, it must be
conceded that the conveyance of the premises to her by Mr.
Haussman on her promise to re-convey upon request and her
promise to do so, apparently created an express trust in the

land conveyed. Such a trust cannot be proved by parol. *Dean* v. *Dean*, 6 Conn., 285; *Vail's Appeal from Probate*, 37 id., 198; *Todd* v. *Munson*, 53 id., 579. The plaintiff disclaims any right to recover by reason of such a trust even if it existed—which he does not admit. Nor can he claim a resulting trust from the fact that the deeds were without actual consideration. He is estopped by his deed. *Belden* v. *Seymour*, 8 Conn., 304; *Feeney* v. *Howard*, 79 Cal., 525; *Graves* v. *Graves*, 29 N. Hamp., 129; *Philbrook* v. *Delano*, 29 Maine, 412. His claim is that before Mr. Haussman requested Mrs. Haussman to re-convey to him there was no trust, but that after he made that request a trust arose. It can hardly be said that the request alone made Mrs. Haussman a trustee. The request did not change the character of her promise, it only fixed the time when it became her duty to perform it. According to the claim of the plaintiff, if Mr. Haussman had never made any request for a re-conveyance, or if upon such a request the land had been revested in him, there never would have been any trust at all. But he insists that because the land was not re-conveyed to him upon his request therefor, Mrs. Haussman became a trustee for him by construction of law.

Pomeroy's Equity Jurisprudence, section 155, says:— "All instances of constructive trusts may be referred to what equity denominates fraud, actual or constructive, including acts or omissions in violation of fiduciary obligation." In another part of the same section it says that constructive trusts are sometimes called trusts *ex maleficio.*

The plaintiff's brief states his claim in this part of the case as follows:—" The facts show constructive fraud from which equity raises a constructive trust, owing to the confidential relation of husband and wife;" and gives as authority for this proposition, *Brison* v. *Brison*, 75 California, 525. The civil code of California provides that " actual fraud consists * * * in any of the following acts; * * * —a promise made without any intention of performing it." Another section of that code says that " either husband or wife may enter into any engagement or transaction with the other or

with any other person, respecting property, which either might if unmarried; subject in transactions between themselves to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts." The case of *Brison* v. *Brison*, supra, was a suit brought to have a trust declared. The complaint averred that the plaintiff and defendant were husband and wife. The plaintiff was the owner of the property in question, upon which there was a mortgage. In order to raise the money to pay off the mortgage the plaintiff determined to go to Arizona and engage in business there, and was desirous of making a will before his departure, so that his property should go to his wife. But being influenced by the wish to save her the expense of probate proceedings in case of his death, and relying on her parol promise that she would re-convey to him upon his request, he made the deed to her absolute in form and took no written acknowledgment from her, but though the deed recited a consideration, yet in truth and in fact there was no consideration therefor, and no money was paid or intended to be paid as a consideration for the deed. The complaint also averred that the promise by which the plaintiff was induced to make the deed was in bad faith and false and made with intent on her part to deceive and did deceive the plaintiff. The complaint was demurred to. The court held the complaint sufficient on the ground that it charged an actual fraud within the code of that state. In giving the opinion the court remarked that the complaint might be sustained on the ground of the confidential relation of husband and wife because of the fraud.

I look in vain through this case for any indication of fraud or want of good faith on the part of Mrs. Haussman. On the contrary the facts show that she made the promise to re-convey honestly and with the full intention to perform it. She did perform it so far as performance depended on her. It is well settled that the failure to perform a promise honestly made is not fraud. *Feeney* v. *Howard*, 79 Cal., 525; *Perry* v. *McHenry*, 13 Ill., 227; *Wheeler* v. *Reynolds*, 66 N.

York, 234 ; *Levy* v. *Brush*, 45 id., 589 ; *Cowan* v. *Wheeler*, 25 Maine, 269 ; *Burden* v. *Sheridan*, 36 Iowa, 125 ; *Boyd* v. *Stone*, 11 Mass., 348. · This case is entirely unlike the case of *Brison* v. *Brison*. No fraud, actual or constructive, towards her husband can be imputed to Mrs. Haussman, for she did exactly what he asked her to do, and just what she had promised to do so far as it was possible for her to do it. That the deed failed to have the effect they desired was owing to the mistake of Mr. Haussman as much as to any mistake of Mrs. Haussman. It was a mutual mistake, owing to incorrect advice as to the legal effect of that deed. It has been laid down by high authority that where parties have been mutually mistaken as to the legal effect of the transaction into which they have entered, equity will not interfere to reform the contract. *Eaglesfield* v. *Marquis of Londonderry*, L. R., 4 Ch. Div., 693 ; Pomeroy's Equity, sect. 846 ; *Wheaton* v. *Wheaton*, 9 Conn., 96. Whether or not this is the law it is not necessary to decide. In the present case the mistake is as to a statute requisite, which on other grounds cannot be supplied by any equitable interference, as already shown.

I think the Superior Court should be advised to dismiss the complaint.