## WATROUS and others *against* CHALKER.

*A.* and *B.*, his wife, conveyed her land to *C.*, the daughter of *B.*, and wife of *D.*, by deed of gift; after which *A.* was committed to prison, on an execution in favour of *E.*, and held in close confinement. With a view to obtain his liberation, *C.* agreed with her husband *D.*, that if he would assume the debt to *E.*, by giving his note for the amount, she would pay it from the avails of the land so conveyed to her. *D.* gave his note accordingly, and *A.* was liberated from imprisonment. Immediately afterwards, *C.* died; and *D.*, having paid the note to *E.*, exhibited to the court of probate his claim for the money so paid, against the estate of *C.* Held, 1. that the agreement between *C.* and *D.*, having been executed on one part, was not within the statute of frauds and perjuries, and might be proved by parol; 2. that if *D.* had an equitable claim, which a court of chancery, on suitable process, with the parties in interest before it, could enforce, it was not competent to a court of probate to allow it; but 3. that the agreement, having been made by a feme covert with her husband, without benefit to her, was void, and could not be enforced anywhere.

THIS was an appeal from a decree of the court of probate, in the district of *Saybrook*, allowing the account of *Augustus Chalker*, administrator on the estate of his late wife, *Rhoda Chalker*, and ordering a sale of her real estate sufficient to pay the amount. The principal part of the account, and the only part excepted to, was for "cash paid on note to *Richard W. Hart*,—$424. 86."

On the 29th of *March*, 1819, *Elsie Watrous*, and her husband *Ambrose Watrous*, in her right, being seised and possessed of all the land owned by *Rhoda Chalker* at her death, conveyed it, by deed of gift in fee, to her; she being the daughter of *Elsie Watrous* by a former marriage, and then the wife of *Augustus Chalker*. At the time of this conveyance, *Ambrose Watrous* was involved in debt, particularly to *Richard W. Hart*, who caused him to be committed to prison on an execution for such debt, where he was kept in close confinement. *Rhoda*, being desirous of effecting the liberation of her father-in-law, offered her husband, that if he would assume the debt to *Hart*, by giving his note for the amount, she would pay it out of the land so conveyed to her, which should be

holden for this purpose, and he might, at any time, sell so much *Middlesex,* of it as should be necessary for the payment of the debt, and July, 1828. apply the avails to that use, and she would unite with him in the conveyance. This proposition was acceded to ; and accordingly, *Augustus Chalker* gave his note to *Hart,* who accepted it, and liberated *Watrous* from imprisonment. Shortly afterwards, and before there had been an opportunity of selling the land, *Rhoda* died suddenly, without issue, leaving the appellants and three others her heirs at law. *Hart* then enforced payment of the note against *Augustus Chalker,* who, being appointed administrator on the estate of his late wife, charged the sum paid in his administration account, constituting the item above specified. *Ambrose Watrous* and his wife, and the three heirs who did not join in the appeal, assented to the sale of the land, and the allowance of the claim.

Watrous
*v.*
Chalker.

The evidence adduced to prove the agreement above stated, was parol ; to the competency of which the appellants objected. They also insisted, that the agreement, if proved by written evidence, was void. The court sustained the objection ; rejected the evidence ; and reversed the decree of probate. *Chalker,* the administrator, moved for a new trial ; and the case was reserved for the consideration of this Court.

*Sherman* and *Waite,* in support of the motion, contended, 1. That it was the duty of the administrator and the court of probate to adjust and settle all *equitable,* as well as legal claims, against the estate of *Rhoda Chalker.*

2. That the claim in favour of *Augustus Chalker,* was an equitable claim against her estate. A feme covert may contract for the sale of her real estate ; and a court of equity will compel the execution of the contract. *Baker* v. *Child,* 2 *Vern.* 61. 1 *Madd. Chan.* 310. 378. (*N. Y.* ed. 1817.) 2 *Swift's Dig.* 127. & seq. *Livingston* v. *Livingston,* 2 *Johns. Chan. Rep.* 537. If the agreement was not void, the debt to *Hart* was an incumbrance on her estate.

3. That parol evidence was admissible and proper to prove the agreement. *Cady* v. *Cadwell,* 5 *Day* 67. *Clinton* v. *Hooper,* 1 *Ves.* jun. 173. 184.

*Hungerford,* contra, insisted, That the agreement claimed to have been made with *Rhoda Chalker,* was utterly void. In support of this position he urged the following considerations.

<div style="margin-left">
Middlesex,
July, 1828.

Watrous
v.
Chalker.
</div>

First, as she was a feme covert, at the time of making the agreement, it would be inconsistent with sound policy to give it effect.

Secondly, it was void by the statute relating to the alienation of real estate by a feme covert. *Stat.* 304. *Butler* v. *Buckingham*, 5 *Day* 492.

Thirdly, it was void by the rules of the common law, and cannot be enforced in chancery. *Dibble* v. *Hutton*, 1 *Day* 221. *Goodwin* v. *Goodwin*, 4 *Day* 343. *Butler* v. *Buckingham*, 5 *Day* 492.

Fourthly, if a court of chancery will, in any case, enforce the contract of a feme covert, in this state, it will be careful to see, that her rights are protected ; and in this case, there was no consideration beneficial to her.

HOSMER, Ch. J. I will first put out of the case certain questions made, arising on facts apparent on the motion, but subserving no purpose, except to encumber the record. It is said, that *Ambrose Watrous* and *Elsie* his wife, and likewise a part of the heirs of *Rhoda Chalker*, are desirous, that the relief granted by the court of probate should be established. The wishes or assent of these persons possess no weight bearing on the case before us. The heirs, who are favourably disposed to the administrator's claim, may, if they please, convey their parts of the estate in question to him ; and in respect of *Ambrose* and *Elsie*, they are strangers to the matter under discussion. Their donation of the land to *Rhoda*, the daughter-in-law of the former, invests them with no right over the donee or the estate given, either at law or in chancery.

I readily admit, that the statute of frauds and perjuries presents no embarrassment in the case. The contract, if such it may be called, has been executed on one part, and is not within the law. *Cady* & al. v. *Cadwell*, 5 *Day* 67. *Downey* v. *Hotchkiss*, 2 *Day* 225.

There are two questions in the case. First, had the court of probate any jurisdiction over the controverted enquiry concerning *Rhoda's* equitable obligation ? If not, the allowance to the administrator of the sum paid on the note to *Richard W. Hart*, was void. And secondly, do the facts shew any obligation on the deceased feme covert, which a court of chancery in this state will recognize and enforce ?

On the first enquiry I entertain no doubt. If the court of

probate was competent, without hearing the parties to be af- <span>*Middlesex*,</span>
fected, to decide the point of equitable obligation against the July, 1828.
deceased, and to allow the administrator the sum paid by him, Watrous
upon the ground of a supposed equitable right, it not only has *v.* Chalker.
the extreme of chancery jurisdiction, but more than the ex-
treme. The dilemma in which the court was placed, of grant-
ing or refusing the administrator's claim, resulted from his vol-
untary and unauthorized act. As administrator, he had no
authority to make payment of the promissory note of another
person than the deceased. It was no debt or claim on the es-
tate ; and a court of chancery, on suitable process, with the
parties in interest before it, was the only tribunal that had cog-
nizance of the matter in question, or that could impart a reme-
dy adapted to the nature of the case. The jurisdiction of a
court of probate is limited ; and it would be vain to search af-
ter usage, principle or analogy, to warrant its interposition for
the adjudication and settlement of the supposed equitable claim
against the heirs of the deceased.

In respect of the second enquiry, but few observations are
necessary.

I shall not enter into the chancery law of *Westminster-Hall*,
or in the surrounding states, because the occasion does not de-
mand it. I will barely remark, that over the *separate estate*
of a feme covert, through the medium of a trustee, or of her
husband in that character, if no trustee is appointed, she is held
competent to deal with it as if she were a feme sole. *Jaques v.
Methodist Episcopal Church*, 17 *Johns. Rep.* 548. It has, like-
wise, been adjudged, that she may contract with her husband
for a transfer of property from him to her, if it be done *bona
fide* and for valuable consideration. Lady *Arundell* v. *Phipps*,
10 *Ves.* 139. 145. *Livingston* v. *Livingston*, 2 *Johns. Chan.
Rep.* 537. No case, however, has been cited, nor am I aware
that any exists, enforcing against a feme covert an agreement
made with her husband, without either *value* or *benefit* to her-
self ; and this I take to be the present case. Prompted by
feeling, and under no legal or equitable obligation, the feme
requests her husband to give his promissory note, and to make
payment of it out of the avails of her land. This is the whole
case ; and nothing parallel to it, so far as my information ex-
tends, is to be found in the determination of any court.

I now pass from a subject, which it is no part of my purpose
to discuss, and enquire what is the chancery law of *Connecti-
cut*, applicable to the case before us.

Middlesex,     *Butler* v. *Buckingham*, 5 *Day* 492. decided by this court, by
July, 1828.   the unanimous opinion of nine judges, is in point against the re-
Watrous       lief granted by the court of probate.   A feme covert, with the
*v.*          consent and approbation of her husband, agreed to sell a lot
Chalker.      of land, for a valuable consideration ; and the consideration
paid, with the like consent, was appropriated to her separate
use.   The intended purchasers entered on the land, erected a
house and store, and were in the lawful possession for twenty
years.   Under these imposing circumstances, the court held
the agreement of the feme covert void, and that chancery
could give no relief   The case is long, and I shall not attempt
an abbreviation of its contents.   The principle established was
this ; that an agreement by a married woman, with the
assent of her husband, for the sale of real estate, and on valua-
ble consideration, is void in law, and that courts of equity will
never enforce such a contract against her.   Our statute de-
clares, expressly, that the estate of a feme covert shall not be
alienable, unless by deed, executed by her, and acknowledged ;
and that without her assent, evinced in this manner, all sales or
alienations of her land shall be, *ipso facto*, void.    *Stat.* 304. *tit.*
56. *sect.* 14.   The learned and able judge, who delivered the
opinion of the court, in the case last cited, said, most forcibly :
" All sales void, and all contracts for sales good !   No, this can-
not be.   If the sale of the estate, unless with the circumstan-
ces above mentioned, be void, every contract to sell at a future
day, must be equally void."   This reasoning, in my opinion, is
invincible.   This case has remained unquestioned to the pre-
sent time ; and in my opinion, the principle on which it was
determined, is unquestionable.   It goes the length of deciding
the one before us, and even beyond it.   If a contract by a mar-
ried woman, for valuable consideration, appropriated to her
use, is by law invalid, and not to be enforced in chancery, *a
fortiori* is an agreeement, without consideration, and without
benefit.

The determination of the judge at the circuit was, undoubt-
edly, correct ; and no new trial is advised to be granted.

The other Judges were of the same opinion, except BRAIN-
ARD, J., who was absent.

New trial not to be granted.