## WILLIAM HAYDEN AND OTHERS *vs.* HELEN M. DENSLOW.

W made a conveyance to E, his father, in fraud of his creditors, E agreeing by parol to convey the premises to the wife of W, and making a will at the time in which he devised the same to her. Before his death, however, in the absence of W, he conveyed the premises by a quitclaim deed, without valuable consideration, to W and certain other of his children. After the death of E, W conveyed his interest under the deed without valuable consideration to his daughter H. Afterwards the other grantees brought a petition in chancery against H, for a sale of the premises, under the statute authorizing the court to order a sale where it will promote the interests of tenants in common more than a partition. Held, 1st. That parol evidence was admissible to prove the trust in favor of the wife of W, upon which the premises were conveyed by W to E, such conveyance by W being an execution of the contract on his part which took it out of the statute of frauds. 2d. That although the creditors of W, against whom the conveyance to E was fraudulent and void, had taken no steps to assert their rights, and were not parties to the suit, yet, as a sale of the premises was not demandable by the petitioners under the statute as a matter of right, but rested wholly in the discretion of the court, the court would consider the interests of the creditors in exercising their discretion, and would not order a sale.

The power conferred on the court by the statute referred to is an extraordinary power, and in exercising it, a careful regard should be had to the interests of all parties.

BILL in equity for a sale of certain premises held by the petitioners and the respondent as tenants in common.

The answer alleged that the petitioners had no equitable interest in the premises, but that Maria S. Denslow was the sole equitable owner thereof, under a deed to one Elihu Denslow, under whom the petitioners claimed, which deed, though absolute in form, was made solely in trust for the said Maria. The said Maria was not made a party to the bill.

The facts material to the case, as found by a committee, are as follows: Prior to September 19th, 1848, the premises in question were owned by William J. Denslow, who, on that day, mortgaged them to his father, Elihu Denslow, and on the 16th of September, 1853, conveyed his interest in the same to the said Elihu by quitclaim deed. The mortgage and quitclaim were both without consideration and fraudu-

lent as against the creditors of William, he having been embarrassed by his debts at the time of both conveyances, and making the former for the purpose of covering up the property from his creditors, and the latter for the purpose of securing it to his wife against their claims. At the time when the quitclaim deed was executed, a parol agreement was made by the said Elihu, to convey the premises, either by deed or devise, to Maria S. Denslow, the wife of William, and he received it under that agreement; and a will was at the time drawn and executed by him, by which he devised the premises to her. Immediately afterwards the said William went to California, where he remained until after his father's death, which occurred in March, 1855. His wife remained in the occupancy of the property, and expended some money in repairs upon it, the money being derived in part from rents received from a portion of the property and in part from the earnings of her minor daughter. The said Elihu never assumed any control over the property and never expended any money upon it. On the 7th of February, 1855, the said Elihu, by a quitclaim deed, conveyed the premises to the said William, and to five daughters of the said Elihu, as tenants in common, reserving a life use in himself, and the use of an undivided third in his widow for her life. This deed was made upon no valuable consideration, and the said Elihu intended by it to make a disposition of the property in place of one by will. The petitioners are these daughters of the said Elihu and their husbands. The interest of the widow was, soon after the death of the said Elihu, released to the above named grantees. William J. Denslow afterwards conveyed his interest without valuable consideration to the respondent, his daughter, Helen M. Denslow.

The petitioners objected to the admission of any parol evidence to prove the trust in favor of the said Maria, under which the respondent claimed that the said Elihu held the premises, but the committee admitted it, and on the evidence found the facts that have been stated in relation to that subject. The property was found by the committee to be of

such a character that it could not be aparted without serious inconvenience and loss.

The questions arising upon the report of the committee were reserved for the advice of this court.

*Hungerford*, for the petitioners.

The parol evidence introduced by the defendant was not legally admissible. By the deed the legal title was vested in Elihu Denslow, and that title he conveyed to the petitioners and William J. Denslow. Parol evidence is not admissible to vary the effect of a deed either at law or in chancery, or any other written instrument, with the exception of a few cases, as the correction of a mistake or the showing of an implied trust. *Dean* v. *Dean*, 6 Conn., 285. *Reading* v. *Weston*, 8 id., 117. *Benton* v. *Jones*, id., 186. *Brainerd* v. *Brainerd*, 15 id., 575. *Hutchinson* v. *Tindall*, 2 Green's Cha. R., 357. In the present case the trust claimed was of necessity an express trust, as there could be none by implication resulting to Maria S. Denslow, and there is none other than an express trust pretended. The only trust set forth in the answer is a trust by virtue of the deed given by William J. to Elihu Denslow, and created at the time the deed was given. Nothing more virtually is alleged in regard to it— nothing to show a part performance, or any thing else to take the case out of the statute of frauds; and that parol evidence is not admissible to produce such effect the authorities are abundant. If the defendant claimed that there was any thing to take the case out of the statute, or that it was an exception to the common law rule, she should have set it forth in her answer, according to the course of chancery pleading and the rule of the court. (18 Conn. R., 578.) The answer embraces no facts from which an implied trust can be inferred. When the deed was delivered to Elihu Denslow the estate vested absolutely in him, as much as if purchased for a valuable consideration and in good faith. *Chapin* v. *Pease*, 10 Conn., 69. *Owen* v. *Dixon*, 17 id., 492. *Waterbury* v. *Westervelt*, 5 Seld., 598. The finding being as

it is, the supposed trust could not be enforced even if the answer were adapted to such a case, both because there has been no part performance to take the case out of the statute, and for the further and decisive reason that the conveyance to Elihu Denslow was in fraud of creditors, and the trust, if one in fact existed, is one that would never be enforced by a court of equity. *Harris* v. *Delamar*, 3 Iredell Cha., 219. *Roan* v. *Vidal*, 4 Munf., 187. Elihu Denslow's will contained no declaration of trust and was of no effect during his life. [*Judge Seymour.* It appears by the finding of the committee that the petitioners are not in possession, and that Maria S. Denslow is in possession, and I think claiming adversely. Can we decree a sale when the land is held by a third party adversely?] It does not appear that Maria S. Denslow holds adversely. [*Judge Ellsworth.* There clearly can be no partition where the parties are out of possession. A party must bring ejectment and get into possession before he can have partition.] [*Judge Storrs.* We have recently so held in the case of *Adams* v. *Ames Iron Company*, in 24 Conn.] But the defendant here sets up an equitable title, and it is necessary for us to go into chancery where on either side the title set up is an equitable one. If we should bring an action of ejectment, the court would, on motion of the defendant, continue the case until the defendant could go into a court of chancery and get the legal title. This is the universal rule. It is proper therefore in such a case to come at once into a court of equity. There are decisive authorities on this point. *Hosford* v. *Merwin*, 5 Barb., 51.

*L. F. Robinson,* for the respondent.

The petitioners seek a chancery sale of real estate to which they have no equitable title. They come before the court, therefore, with no equity. *Calwell* v. *Boyer*, 8 Gill & Johns., 136. 1 Story Eq. Jur., § 656, (b). Such a sale would operate as a fraud on the parties really entitled to the land; that is to say, either upon Maria S. Denslow or the creditors of W. J. Denslow, one of these parties having the right to divest the petitioners of a legal title, which they have received

without consideration, as mere volunteers from Elihu Dens-
low. *Cartwright* v. *Pultney*, 2 Atk., 380. *Coxe* v. *Smith*, 4
Johns. Cha., 271, 276. The parol gift, completed for the
time being by the making of the will, by which Mrs. Dens-
low was induced to take possession and expend money on
the land, will entitle her to a specific performance as against
the mere representatives of Elihu Denslow, or to a cancella-
tion of the fraudulent deed to them. *Crocker* v. *Higgins*, 7
Conn., 342. *Brainerd* v. *Brainerd*, 15 id., 575. *Case* v.
*Worthington*, 1 Root, 172.

But it is said that we can not set up this equitable title in
Mrs. Denslow. But may we not show that the petitioners
have no equitable title? And it is of no consequence in
whom the equitable title rests, so far as this case is con-
cerned, so long as it does not rest in them. They come into
court as petitioners, and we meet them by showing that the
equitable title is not in them but in Mrs. Denslow. We do
this, not for the purpose of asking the court to decree the title
in her, but to show the court that the petitioners have no
equitable claim to a decree for a sale of the land. But they
say that even if we may set up an equitable title in Mrs.
Denslow, yet the title is not a good one, because the deed
under which she claims was fraudulent as against creditors,
and therefore her title is one that a court of chancery would
not aid her in perfecting. But suppose it to be so, yet the
petitioners are not creditors, they are mere volunteers. A
conveyance void as to creditors is good against every body
else, and it is not for these petitioners to say that it is void.
*Phalen* v. *Clark*, 19 Conn., 421. The title vested in Elihu
Denslow and there remains as a good title until attacked by
the creditors. But it is a good title, not for Elihu Denslow,
but for Maria S. Denslow, for whose benefit it was made.
Neither Elihu Denslow nor his voluntary grantees can deny
the trust. It is no objection to the trust that it was not in
writing. It was a case of an executed contract on the one
side, William J. Denslow having fully performed his part of
it in conveying to Elihu. But if it were necessary that it
should be in writing, the will executed at the time by Elihu,

and intended by him as a performance on his part, will be regarded as a written declaration of the trust.

The petitioners have no claim to the decree for which they ask, for the further reason that they are not in possession. Maria S. Denslow is in possession claiming adversely. *Adam* v. *Ames Iron Co.*, 24 Conn., 230. *De Ruyter* v. *Trustees of St. Peter's Church*, 2 Barb. Cha., 555. *Burhans* v. *Burhans*, id., 398.

SEYMOUR, J. The petitioners claim to be tenants in common with the respondent of certain premises in Hartford, and they ask for an order to sell the property thus held, because, they say, it is so situated that it can not be aparted without serious loss and inconvenience. The case was referred to a committee, and from his report it appears that the property was formerly owned by William J. Denslow. He mortgaged and afterwards quitclaimed it to his father, Elihu Denslow, who thus became vested with the entire legal title. In 1855 Elihu Denslow deeded the premises by quitclaim to the petitioners and to William J. Denslow. The title of William J. by virtue of the last mentioned deed has now become vested in the respondent. It thus appears that the petitioners and respondent hold the premises as tenants in common, and the committee further finds that partition can not be made without great inconvenience and loss.

Upon these facts, if there were no other in the case, the court would direct a sale, as asked for in the petition, in conformity with the statute which authorizes the court to make that order in such cases.

But it appears from the committee's report that the notes secured by the mortgage to Elihu Denslow were, soon after the mortgage was made, given up to be cancelled, and that the quitclaim of the premises to him was without consideration,—that it was understood between him and his son, the grantor, when the deed was given, that he should convey the property to Maria S. Denslow, his son's wife, either by deed or by will,—that he exercised no control over the property, but it was in the occupancy of the said Maria,—and that he,

the said Elihu, received the deed and held the premises in trust for the said Maria. The committee further finds that the deed from Elihu Denslow under which the petitioners claim title, was wholly without consideration.

Upon these facts the respondent claims that the equitable title to these premises is in Maria S. Denslow, and that the petitioners are not the real owners, having nothing but a naked legal title, and that upon their application a judicial sale ought not to be ordered.

These claims of the respondent must certainly prevail unless some satisfactory reply can be made to them, for, upon the facts thus found and thus stated, it appears that Elihu Denslow held this property in trust for his son's wife, and that the petitioners have paid nothing for the property, and therefore take subject to the trust. A sale therefore by the petitioners would be in violation of the equitable rights of Maria S. Denslow and a breach of trust. Such a sale, upon this state of the case, the court certainly could not order or sanction.

In reply to the case of the respondent as thus stated, the petitioners make two distinct answers.

First, they say that this supposed trust and this agreement to convey the property to Maria S. Denslow, are proved by parol testimony, which was objected to at the trial and ought not to have been received.

It is undoubtedly true that the trust and agreement relate to interests in land and are within the statute of frauds and perjuries, but the contract is fully executed on one part. William J. Denslow conveyed the property to his father, and so far as the point now under consideration is concerned, the case is the ordinary one of a husband conveying real estate to a friend, to be by that friend reconveyed to the grantor's wife. The agreement to reconvey is indeed a contract relating to land, but after a deed is given and received for that purpose the contract is executed on one part, and is by this part execution taken out from the operation of the statute of frauds. Were it otherwise, a statute made to prevent fraud

would become an instrument of frauds greater than those it was intended to guard against.

But the petitioners make a second answer to the respondent's claim, and this answer raises a question of considerable importance.

It appears from the committee's report that the mortgage from William J. to Elihu Denslow was a gross fraud upon the creditors of the grantor, and that the quitclaim deed of 1853 was in like manner fraudulent, and the petitioners say that if Maria S. Denslow should seek for the aid of a court of equity to compel a conveyance to her, she would be met with the objection that the contract or trust under which she claims title is tainted with fraud, and that her equitable title must be traced through this fraudulent contract. This question regarding the rights of Maria S. Denslow is attended with some difficulties, and inasmuch as she is not a party to this bill and as her rights can not be definitely settled in this suit, we prefer to put the case upon grounds which we think free from difficulty, without deciding how far her equitable claim may be affected by the fraudulent nature of the contract under which she derives title.

It appears from the committee's report that the petitioners, in order to avoid the equitable title of Maria S. Denslow, offered proof that the mortgage and quitclaim to Elihu Denslow were fraudulent; and we have seen that without this proof her title must prevail, for if there were no fraud in the case the trust for her benefit must be carried into execution. By their testimony as to this fraud, the plaintiffs claim that the title of Maria S. Denslow is destroyed, but the same testimony discloses another title, equally formidable, in the creditors of William J. Denslow. The case presented is one of gross fraud attempted to be practiced on these creditors, and upon the facts found they are the parties entitled to have this property. It does not indeed appear that they have yet taken steps by attachment or otherwise to obtain their rights, and it is also true that the title of a fraudulent grantee is good until avoided. Upon such title a partition may perhaps be demandable, but a sale under the statute is not de-

mandable as matter of right. The statute gives the court power as a court of equity to order the sale, but does not require such order to be made; and we think the court ought not to decree a sale that may affect injuriously the rights of third persons, whether such rights are vested or contingent; especially the court will not order a sale that may seriously affect the rights of creditors. If a judicial sale is made of these premises, the rights of *bona fide* creditors will be embarrassed and perhaps lost, while those claiming title without consideration under fraudulent conveyances will enjoy the proceeds of the sale. The hazards of an unsound title should remain with those who have taken it, and ought not to be transferred to others by the order of a court of equity.

The powers conferred on the court by the statute under which this application is made are extraordinary powers. Persons of full age and capacity are by the statute obliged to submit, upon the motion of others, to a judicial sale of their interest in property held in common or coparcenary. Such a power ought to be exercised with a careful regard to the rights of parties objecting to the sale. The respondent says that the title to this property is unsettled, that it is not in such a state as to invite purchasers, that if now ordered to be sold her interest in the property will be subject to a ruinous sacrifice, and that no pressing necessity for immediate sale is shown. These arguments seem to us to have weight, and in connection with the other considerations which have been suggested seem decisive against the application. The superior court is therefore advised to dismiss the bill.

In this opinion the other judges concurred.

Advice that the bill be dismissed.