PERRY S. STRANG *v.* JOSEPH V. WITKOWSKI ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued May 3—decided July 10, 1951

*Leon A. Bradbury* and *George H. Dession,* for the appellants (defendants).

*Robert P. Butler* and *Valentine Sacco,* for the appellee (plaintiff).

JENNINGS, J. Three of the four defendants are individuals formerly operating as a partnership. The other defendant is a corporation organized by them to carry on their business. The plaintiff brought this action to obtain an accounting of commissions claimed by him to have been earned pursuant to an oral contract with the individual defendants. He further sought and secured an injunction against the transfer of stock by the individuals and the corporation. The defendants in effect pleaded a general denial and three special defenses. Two of them amounted to a claim that the alleged contract was an unlawful restraint of trade and the third that it was unconscionable. They also claimed on the trial that the oral contract alleged was unenforceable because it was within the Statute of Frauds.

The defendants have indulged in one of the wholesale attacks on the finding which have so often been criticized by this court. *State ex rel. Hartnett* v. *Zeller,* 135 Conn. 438, 439, 65 A. 2d 475; *K. B. Noble Co.* v. *Popielarczyk,* 125 Conn. 699, 701, 8 A. 2d 33; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 685 n., 155 A. 928. The finding contains 147 paragraphs. The defendants attack more than half of them and in addition seek to add eighty-two paragraphs of their draft finding. The study of the long record made necessary by this attack indicates that the trial judge not only fully understood the issues but that his recollection of the involved testimony was remarkably accurate. No change in the finding can be made which will improve

the position of the defendants. It may be summarized as follows:

The plaintiff came to Hartford in 1939 and entered the employ of the Wiremold Company. He had had extensive manufacturing experience. He left Wiremold in 1943 and became a manufacturer's representative. As such he was extremely active in making contacts and securing orders and work for various Connecticut concerns. He maintained no office but conducted his business from his home and his automobile.

Joseph V. Witkowski, Albert J. Hebert and Lucien R. Koczera, hereinafter referred to as the defendants, formed a partnership in 1941 to carry on a general fabricating, machine cutting, welding, soldering and brazing business. They were all fully employed in local factories, but in their spare time they were able to build up a very substantial business for the partnership. It increased still further after they met the plaintiff and by 1944 all the partners had given up their other positions and were devoting their entire time to the partnership business.

Hebert was introduced to the plaintiff in the fall of 1943 and discussed with him the possibility of his obtaining customers, work and orders for the defendants. Hebert then arranged a meeting between the plaintiff, Witkowski and himself later in the fall. At that meeting it was agreed between the plaintiff and the defendants that the latter would pay the former a 5 per cent commission on gross billings for all work done by the defendants for customers secured by the plaintiff, including repeat orders from such customers. Pursuant to this agreement the plaintiff obtained customers and business for the defendants. They sent the plaintiff duplicate invoices of shipments made of work so obtained up to July 5, 1946, and remitted to him 5 per

cent of the gross amount of each invoice. Their books showed 121 invoices for such work for nine different companies.

As is indicated by the finding, most of the controversy concerned the account of the Champlin Box Company, one of the customers obtained by the plaintiff. Its orders started in a small way but increased rapidly so that by May 1, 1948, the date to which the accounting was ordered, they totaled $607,488.73.

In July, 1946, the plaintiff had a conference with Witkowski and Hebert about his commissions. Witkowski informed the plaintiff that they were in need of working capital and were unable to pay his commissions at that time. The plaintiff said he would wait. On October 18, 1946, he received from the defendants a check for $472.60, which represented the usual 5 per cent commission on orders received from the Champlin Box Company in accordance with the invoices sent with the check. On December 20, 1946, the plaintiff received $553.24 from the defendants on the same account for orders received up to and including July 5, 1946, in accordance with the invoices sent with the check. At a meeting in May, 1948, the plaintiff was informed that the defendants were incorporating and that they wanted to settle up what they owed. Negotiations to that end were not successful. While not specifically found, it is apparent that the plaintiff's privilege of obtaining customers was terminated at that time.

On July 9, 1948, the defendants sent to the plaintiff a partnership check for $2000 bearing the notation "Commissions Due," and it was entered on the partnership books as "Commissions." No invoices accompanied the check and the plaintiff retained but did not cash it. Payment on it was stopped and this litigation ensued.

The defendants' claim on the factual question relat-

ing to the Champlin Box Company business was that the plaintiff did not procure it and that it could not come under the original contract in any event. The latter claim was based on the fact that this work included a substantial amount of material, whereas the other orders were, generally speaking, for labor only. The plaintiff testified that he had said to the defendants, "This [Champlin Box Company] is a contact that I did not originate and I want to be sure that I am being taken care of on my commission basis if I make this contact." He continued: "Al referred to Joe and they said 'Yes,' I would receive my regular commission on all business from Champlin if I was successful in making the contact, and then I proceeded to do that." This testimony alone is sufficient to support the finding on the first point. On the second, the fact that the defendants paid 5 per cent on the gross amount of thirty-four invoices from Champlin and then sent $2000 for commissions due would lead to the same result.

On these facts the court reached the following conclusions: The oral arrangement was made; it was not terminated in July, 1946; it was not within the Statute of Frauds; it was subject to termination only by mutual consent; it was limited in time by the lifetime of the plaintiff; it was in accord with the usual custom of the trade; it was not unconscionable; it was not an unreasonable restraint of trade.

It is a little difficult to understand the claims of the defendants, pressed in their brief, that the contract was unconscionable and an unreasonable restraint of trade. The finding shows that both parties were free agents. The only obligation of the defendants was to pay a 5 per cent commission on work received from customers obtained by the plaintiff. Their own claims of law indicate that this was their understanding. As to their claim that the meeting of July, 1946, constituted an

accord and satisfaction, the court found to the contrary on sufficient evidence, and the defendants did not plead it. Accord and satisfaction and payment are affirmative defenses which should be pleaded. Practice Book § 104. Their claim that the oral contract was too indefinite to be binding is without merit. The court found to the contrary, and the terms of the contract and the practical construction given to it by the parties support this finding.

The principal issue on the trial and on the argument of the appeal concerned the application of the Statute of Frauds. General Statutes § 8293. The defendants claimed that the oral agreement was one not to be performed within one year and that therefore it was unenforceable. The understanding which was entered into between the parties in the fall of 1943 was nothing more than an offer by the defendants to become bound to the plaintiff for commissions if he procured customers. Each time the plaintiff secured a customer for the defendants there was a contract fully performed on his part. Full performance by one party to a contract takes it out of the statute. *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 186, 183 A. 887; *Pyskoty* v. *Sobusiak,* 109 Conn. 593, 598, 145 A. 58; *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 247, 137 A. 769; *Haussman* v. *Burnham,* 59 Conn. 117, 133, 22 A. 1065; *Hayden* v. *Denslow,* 27 Conn. 335, 341; *Eaton* v. *Whitaker,* 18 Conn. 222, 230; *Watrous* v. *Chalker,* 7 Conn. 224, 226; *Ives* v. *Gilbert,* 1 Root 89, 90; 2 Corbin, Contracts § 457; 2 Williston, Contracts (Rev. Ed.) p. 1471; note, 6 A. L. R. 2d 1053, 1111 et seq.; see Restatement, 1 Contracts § 198, comment a, illust. 9. The contracts, since they had been fully performed by the plaintiff and nothing remained to be done by the defendants except to pay the commissions earned, were not within the statute.

The recent case of *Burkle* v. *Superflow Mfg. Co.*, 137 Conn. 488, 78 A. 2d 698, does not hold to the contrary. A brief quotation will show the factual distinction. It reads (p. 493): "The contract in the present case . . . binds the plaintiff partnership to solicit orders for an indefinite and indeterminable time in the future, and it obligates the defendant to pay commissions on all such orders. It is not a contract for personal service by an individual whose death within the year would end it. It is not an agreement to perform a single designated act or a series of designated acts, as to which the law might imply a reasonable time for performance." The arrangement in the case at bar bound the plaintiff to nothing. No enforceable agreement existed until the plaintiff found a customer for whom work was subsequently done by the defendants. When this occurred, the plaintiff had fully performed his part of what thereupon became a binding contract, although the amount to which he might become entitled thereunder was contingent upon the total work eventually done by the defendants for the customer.

The individual members of the partnership and the corporation formed by them April 30, 1948, are all made defendants. The complaint, in a first count, claimed an accounting and damages. The second count followed the ad damnum in the first count and claimed temporary restraining orders against both the corporate and individual defendants to prevent transfers of stock in the corporation by either. The finding contained one paragraph which set forth the work done by the corporation for the Champlin Box Company. No accounting was ordered for work done after the formation of the corporation. The defendants claim that this amounts to an ambiguous declaratory judgment. There is no allegation in the complaint which would

support a judgment against the corporation for either damages or an accounting. The claim is not valid.

The final claim of the defendants is that no further accounting than that taken in the trial is required. The case was tried with great — perhaps excessive — thoroughness, and a judgment for damages would be desirable to end the litigation. This cannot be ordered. The trial court undoubtedly would have rendered such a judgment if it had felt that all of the information required was at hand. Its failure to do so indicates that further claims may be made in the accounting procedure. One item is obviously lacking in spite of the mass of material. Invoices for work done for the Bush Manufacturing Company to October 15, 1945, were furnished and the commission paid, but invoices for additional work done for the same company in July, 1946, were not furnished to the plaintiff.

As far as the record before us goes, the total of the invoices to Champlin from the individual defendants on which the commission has not been paid appears to be $570,329.78. Since these figures are taken from the books of the defendants, it does not seem as if there could be much question about them. Unless the plaintiff can produce evidence of further work done for Champlin, the work for Bush is all that is not accounted for. We make this suggestion in the hope that this long litigation can be brought to a speedy conclusion.

There is a technical error in the form of the judgment. The finding directs the entry of judgment in accordance with the memorandum. The memorandum orders an accounting for the period from July 1, 1946, to May 1, 1948, a period antedating the formation of the corporation. Because of this and because allegations of the complaint do not support the relief of an accounting against the corporation, the words "the defendants" in the last paragraph of the judgment should be re-

placed with the names of the individual defendants and the period of the accounting limited to that fixed in the memorandum of decision.

There is error in the form of the judgment, it is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.