**Bernard J. LEE, Plaintiff,**

v.

**JENKINS BROTHERS and Farnham Yardley, Defendants.**

**Bernard J. LEE, Plaintiff,**

v.

**Farnham YARDLEY, Defendant.**

Civ. Nos. 5729, 6197.

United States District Court
D. Connecticut.

Nov. 1, 1957.

860

Samuel Gruber, Gruber & Turkel, Stamford, Conn. (Milton Turkel, Stamford, of counsel), for plaintiff.

Morgan P. Ames, Cummings & Lockwood, Stamford, Conn. (Edward R. McPherson, Jr., Stamford, Conn., of counsel), for defendants.

LUMBARD, Circuit Judge.

Plaintiff brings this action seeking recovery of pension payments on the basis of two alleged oral contracts made in 1920, one being an agreement by Jenkins Brothers, made through its then president Farnham Yardley, to pay the plaintiff a pension of stipulated amount, and the other an agreement by Farnham Yardley to pay the pension if Jenkins Brothers did not. Because the alleged contracts violate the Connecticut Statute of Frauds, § 8293 General Statutes, and because Farnham Yardley had no apparent or implied authority to bind the defendant Jenkins Brothers, the complaint is dismissed.

On the basis of plaintiff's testimony, it appears that the plaintiff was business manager of a plant of the Crane Company, a well known manufacturer of valves, fittings, and plumbing supplies, in Bridgeport, Conn., in 1920. At that time the Bridgeport plant was sold by Crane to Jenkins Brothers, the latter taking possession on June 1, 1920.

According to the plaintiff, Jenkins Brothers was interested in retaining members of the staff and work force of the plant, and, with this end in view, Farnham Yardley of Jenkins met with the plaintiff sometime in the first half of 1920. The meeting took place in Charles Barrington's hotel suite in Bridgeport, Barrington being the prospective vice-president in charge of manufacturing. At this meeting, where plaintiff, Farnham Yardley, Barrington and the latter's wife, were present, the plaintiff was reluctant to terminate his association with Crane. At least part of plaintiff's reluctance was due to his fear of losing 13 years of equity in a Crane pension plan which had been established in the form of a gratuity by that company.

Plaintiff testified that to overcome this reluctance, Farnham Yardley, on behalf of the corporation and on his own behalf, promised the plaintiff that if he switched jobs, that when he, Lee, became 60 years of age, a pension not to exceed $1,500 per annum would be paid him, based upon two percent of his annual earnings and including the 13 years of service he had with Crane. Yardley promised that if Jenkins did not pay the pension, then he would. It is Lee's contention that he had fully performed his part of the contract by transferring his employment to Jenkins Brothers, and hence that even if he had been discharged the following week he would be entitled to his pension from age 60 until his death.

On taking possession in 1920 Jenkins Brothers inaugurated a plant-wide pension plan roughly similar to the Crane plan and analogous in many respects to the alleged oral agreement between plaintiff and Jenkins Brothers. The pertinent difference from the oral agreement was that the employee had to be employed by Jenkins when he reached 60 in order to qualify under the plan. This plan, which covered Lee and credited service with Crane, was replaced or supplemented in 1932 by a contributory service pension plan, which the plaintiff accepted in writing. Its features were basically similar to the prior plan, except that the voluntary retirement age was raised to 65.

At the time plaintiff became assistant to Barrington in 1920, he was 30 years old and had been earning about $4,000 annually. He was discharged by Jenkins Brothers in 1945, when he was 55. At that time he was vice-president and general manager of manufacturing, a director of the company and a member of the executive committee. He was receiving $25,000 yearly salary, a 10 percent bonus, and $8,000 annually from a Jenkins affiliate.

Barred from recovering on the company pension plan because he was not in the employ of Jenkins Brothers when he attained the age of 60, plaintiff seeks to recover on the alleged earlier agreement which did not require such service. Both Mr. and Mrs. Barrington are dead. Farnham Yardley, 87 years of age and blind when the complaint was filed, died early in 1957. Thus the plaintiff is the only witness to an oral contract allegedly made 37 years ago.

It is of course axiomatic that a federal court in a diversity action, although following federal procedure, otherwise acts as a forum of the state. In attaching legal consequences to an oral contract allegedly made in Connecticut and to be performed in Connecticut, the statute of frauds of that state as enacted and construed by the highest and intermediate courts is controlling on this court. See Robles v. Folsom, 2 Cir., 1956, 239 F.2d 562, 564.

The applicable section of the Connecticut Statute of Frauds is § 8293 General Statutes:

"No civil action shall be maintained * * * against any person upon any special promise to answer for the debt, default or miscarriage of another * * * or upon any agreement that is not to be performed within one year from the making thereof, unless such agreement, or some memorandum thereof be made in writing, and signed by the party to be charged therewith, or his agent; * * *."

The first clause in effect requires that suretyship agreements be in writing. Throughout his testimony Lee reiterated that Farnham Yardley had guaranteed that Jenkins Brothers would pay the pension, stating that if it did not, he would. No interpretation is possible other than that Farnham Yardley engaged himself to be surety to the obligation of Jenkins Brothers. Since this agreement is not in writing, the contract of suretyship is unenforceable, by the express terms of the Connecticut Statute of Frauds. See 2 Corbin, Contracts, § 347 et seq.

Another clause of this section is likewise applicable to the issues before the court. If the agreement is not one which can be performed within a year, the contract must be in writing. The fact that the agreement may possibly terminate within the year due to the death of a party does not cause the contract to be enforceable, since termination is not performance. Burkle v. Superflow Mfg. Co., 1950, 137 Conn. 488, 78 A.2d 698. Here plaintiff could not call for performance of the alleged contract by the company or Yardley until he reached 60, thirty years after the transaction took place.

Plaintiff contends, however, that he fully performed the contract and hence removed it from the operation of the statute. The doctrine that full performance by one party to a contract takes it out of the statute is law in the majority of jurisdictions in the United States, 2 Williston, Contracts (Rev.Ed.) p. 1471, and it is accepted in Connecticut. See Strang v. Witkowski, 1951, 138 Conn. 94, 82 A.2d 624. Further, it would seem that the performance need not take place within one year, so long as it has been wholly completed by the time that action is brought. See Blakeslee v. Board of Water Commissioners of City of Hartford, 1936, 121 Conn. 163, 183 A. 887.

To recognize a duty in this court to follow a general rule of law in Connecticut does not, however, necessarily provide a solution here. The factual context in which that rule is enunciated must be considered, in view of the statutory prohibition against the enforce-

ment of oral contracts not to be performed within a year, in order that we may understand the limits to which that rule is subject.

The cases to which the court has been referred, which carve out a judicial exception to the statute of frauds, are not inconsistent with its aims and policy. For instance, in Blakeslee v. Board of Water Commissioners, supra, plaintiff sought to recover on a supplemental agreement entered into when the original construction contract had, due to wartime conditions, become completely unrealistic. The Legislature had passed a special enabling act permitting the increase, but the Board refused to pay. In Strang v. Witkowski, supra, the plaintiff had procured customers for the defendant, who subsequently refused to pay the agreed commission.

In both cases, the conduct of the parties is "unintelligible or at least extraordinary" unless related to a contract, see Sleeth v. Sampson, 1923, 237 N.Y. 69, 73, 142 N.E. 355, 30 A.L.R. 1400, and the plaintiffs' allegations draw corroboration from the circumstances. That is not so here. If the plaintiff is permitted to recover in this action, the legislative enactment will have been destroyed by a successively enlarged judicial exception.

■ The statute was enacted to prevent perjury and the enforcement of claims based upon memories made faulty by the lapse of time. Thirty seven years have passed since the brief oral conversation on which the claim is based. All witnesses other than the plaintiff are dead. That the plaintiff did transfer his employment and continued to work for defendant Jenkins Brothers for a long period is without corroborative significance, since he received compensation for his employment and, on discharge, was receiving in excess of $30,000 annually. Plaintiff subsequently was covered by pension plans analogous in many respects to the one on which he now bases his claim.

There is no evidence to support plaintiff's testimony other than his own interested testimony of events 37 years ago. Such a claim cannot be within the exception to the prophylactic rule of the statute of frauds. Indeed the Connecticut courts have not been well disposed toward such claims. See Bird v. Connecticut Power Co., 1957, 144 Conn. 456, 133 A.2d 894. The adoption of a general rule does not require its extension to a logical extreme beyond the reasons for its adoption. Other jurisdictions have restricted the full performance doctrine so as to prevent the vitiation of the statute, compare In re Hippe's Estate, 1930, 200 Wis. 373, 228 N.W. 522 with Grace v. Lynch, 1891, 80 Wis. 166, 49 N.W. 751, and restrictions must apply here if the legislative policy and command are to be given effect.

■ In any event, plaintiff has presented no evidence that Yardley had authority, implied or apparent, to make the contract. Plaintiff contends that defendant Jenkins Brothers' desire in 1920 to secure proper employees either resulted in an implied authority in Farnham Yardley to make the contract in question or caused Lee reasonably to rely on Yardley's apparent authority. Thus, without offering proof of any actual authority or of any continuing course of action implying such authority, the plaintiff seeks to take the question of authority to the jury merely on the evidence that the defendant Jenkins Brothers desired a particular result— a competent staff.

■ The principal is bound by acts of his agents which the third party reasonably believed, from the acts of the principal, to be within the authority of the agent. Washington Cedar & Fir Products Co. v. Elliott, 1917, 91 Conn. 350, 353, 100 A. 29. Clearly, however, the fact that a principal desires to attain a particular object does not empower his agent to use any means to promote that end nor is a third party entitled so to believe.

■ Farnham Yardley was an agent of Jenkins Brothers by virtue of his office as president of the company. As such, he was empowered to act as ordi-

narily and customarily required for the discharge of the duties of that office, and plaintiff could rely on such acts as being duly authorized. Restatement, Agency § 73 (1933). Pension contracts, however, which involve a contingent liability to the company maturing 30 years in the future, are not within the ordinary scope of the duties of president. To invest the president with power to make oral contracts of such a nature that performance will not be called for until he has perhaps died or resigned, contracts subjecting the corporation to contingent liabilities decades in the future, is indeed extraordinary. Such authority is neither implied nor apparent; it requires proof which the plaintiff has failed to bring forward. See Rennie v. Mutual Life Ins. Co., 1 Cir., 1910, 176 F. 202.

One other matter should be noted. If Jenkins Brothers never was obligated to the plaintiff because Yardley could not bind it, it may be that Yardley's promise thereby became a primary, rather than a collateral, obligation. See 2 Corbin, Contracts § 349. Even if primary, however, the promise is within the one year provision of § 8293 General Statutes for the reasons stated above, and is unenforceable.

The complaint is dismissed.