[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, John Kevalas and Ann Kevalas, have brought suit seeking equitable relief to void the transfer of their home to their daughter, defendant Kathleen DeZinno. The plaintiffs concede that they signed a quit claim deed conveying the property to the defendant but claim in Count One of their complaint that the transfer was the result of undue influence and duress; in Count Two that the defendant breached her agreement to pay the expenses of the property and that the transfer was therefore without consideration; and in Count Three that the defendant defrauded the plaintiffs by falsely representing that if they transferred title to her, she would pay the household expenses.
The defendant raises as a special defense the claim that the transfer was made as a gift. The defendant further asserts, pursuant to 164 P.B., that the statute of frauds 52-550 C.G.S., defeats the plaintiffs' second count. The parties have declined the opportunity to file post-trial briefs.
The court finds the facts to be as follows. Plaintiff John Kevalas has suffered for the past forty years from the symptoms of multiple sclerosis. Though he is substantially disabled and is able to move from place to place only by wheelchair or, with great difficulty, by using crutches, he has maintained a part-time job in CT Page 4899 order to be able to pay the living expenses of himself and his wife, plaintiff Ann Kevalas, who has only a third grade education.
The plaintiffs have three surviving children, two of whom moved out of the family home at times not in evidence. The defendant moved out of the family home then moved back a year later. In 1986, she gave birth to a son, who lived with her at the plaintiffs' home. To enable the defendant to have employment, the plaintiff Ann Kevalas left her job at age 62 in order to care for the defendant's son, to whom she became very attached emotionally. The defendant did not pay rent or otherwise contribute to the household expenses.
In the late winter and spring of 1989, the defendant began to urge on her parents a plan by which they would convey to her the family home. While the parties' versions of the discussions are at variance, this court finds more credible the plaintiffs' testimony that in discussions during the Spring of 1989 the defendant promised that if they conveyed the property to her, she and her new companion, Andrew DeZinno, who had moved into the house, would take care of the household expenses, relieving John Kevalas of the need to try to perform a job. The defendant represented that she and Andrew DeZinno would convert part of the house into an apartment for themselves and her son, so that the plaintiffs could continue to see their grandson daily.
The defendant visited an attorney and obtained a quitclaim deed that recited that the transfer of the property was "in consideration of love and affection" and that the grantors, the plaintiffs, "reserve unto themselves and unto the survivor of them a life use in the subject premises." (EX. A).
The plaintiffs did not consult legal counsel but, relying on the defendant's representations that she would live in the house in separate quarters and take over such expenses as the utility bills, accompanied her to the Seymour Town Clerk's office and executed the deed, which she promptly recorded, on April 11, 1989.
The defendant and her boyfriend began some renovations, and the plaintiffs did not press her to pay household bills in May 1989, however when she did not pay the June bills, her father asked her to do so. Except for one bill she paid in July 1989, and the real estate taxes, the defendant has not paid the household bills. The defendant confirmed that in pressing her parents to transfer title to the house to her, she told them that she and her boyfriend would pay for renovations and would take on more and more of the bills so that her father would no longer have to struggle out to work.
In July 1989 the parties quarreled, and at the plaintiffs' CT Page 4900 request the defendant and her boyfriend, whom she subsequently married, moved out of the house in August 1989. The defendant has taken the position that since she was asked to leave the house, she is not obligated to pay the household expenses, and she has paid only the real estate taxes since that time. Discussion
The plaintiffs have failed to present facts to support the claim, made in Count One of their complaint, that they conveyed title to their home as a result of duress or undue influence. "Undue influence" has been defined by the Connecticut Supreme Court as "the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." Reynolds v. Molitor, 184 Conn. 526,528 (1981). The facts indicate that the plaintiffs were not so subject to their daughter's control, but merely expected that she would keep her end of the bargain and agreed to sign the deed with the expectation that she would do so.
Count Three must also fail. In order to establish fraudulent inducement or fraudulent misrepresentation by the defendant, the plaintiffs had the burden of proving their allegations by "clear precise and unequivocal" evidence Aksomitas v. Aksomitas, 205 Conn. 93,100 (1987); J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353,358 (1983). While the plaintiffs have proven that the defendant breached her agreement, they failed to adduce evidence to the requisite standard that she knew at the time she represented that she would pay expenses that she would not, in fact, pay them. Her testimony was that she meant to take over the household expenses, though she interpreted that promise as a matter of gradual, not immediate assumption of them. The defendant recounted to her parents the instance of a friend who was taking care of a widowed parent after receiving the deed to her parent's home, and she evinced a concern with saving her father the effort that physical exertion causes him.
The evidence did not reveal why the defendant did not take over the household bills as promised, however her failure to do so was not shown to have been intended by her from the beginning of her proposal, either by direct or circumstantial evidence. Aksomitas, supra, at 100; Puro v. Henry, 188 Conn. 301 (1982).
As to the second count of the complaint, the defendant asserts that recovery for breach of contract is not available because 52-550
C.G.S. precludes an action for rescission of an oral agreement where the agreement involves transfer of real property. Full performance of the contract by the plaintiffs takes it out of the statute of frauds. Scribner v. O'Brien, Inc., 169 Conn. 389, 403
(1975); Strang v. Witkowski, 138 Conn. 94, 99 (1951). CT Page 4901
Though the deed recites that the consideration for the transfer of the property was "love and affection", that characterization of the agreement does not supersede the evidence, confirmed by the defendant, that she had in fact agreed to pay household expenses in return for title to her parents' home. The evidence did not support the defendant's claim that the transfer was a gift. The plaintiffs agreed to the transfer only because they were persuaded by the advantages their daughter depicted and her reference to the care furnished by a friend to a parent who had so conveyed property.
By failing to pay household expenses either while she lived in the house or after she moved out, the defendant breached her agreement and failed to render the consideration for the transfer that had induced the plaintiffs to sign the deed.
In a situation closely resembling the case at bar, rescission and retransfer of the property to the grantors was held an appropriate exercise of the court's equitable powers. See Caramini v. Tegulias, 121 Conn. 548 (1936). In Caramini, the plaintiff parents had deeded their house to their daughter, reserving a life use, upon the daughter's promise that she would support and care for the plaintiffs during their lifetimes. When the daughter failed to supply sufficient food and clothing, the Supreme Court ruled that the parents were entitled to rescission and retransfer of the property.
While rescission would entitle the defendant to reimbursement for any partial consideration paid, the defendant adduced no evidence on which this court could arrive at any definite amount due her.
The plaintiffs are entitled to a retransfer of their property, and the defendant shall immediately execute a quit claim deed conveying her interest to them. She is hereby enjoined from transferring or encumbering the property in any way pending that transfer.
The plaintiffs shall recover their court costs.
BEVERLY J. HODGSON, JUDGE OF THE SUPERIOR COURT